HENRY H. BROWN
vs.  } SEPTEMBER TERM, 1847.
ROBERT STEWART ET AL.

[INJUNCTION—MORTGAGE.]

IF a mortgagor, in possession, is committing waste, equity will restrain him by injunction.

In Maryland, unless there is some agreement of the parties to the contrary, the mortgagee is entitled to the possession of the property immediately upon the execution of the mortgage, without regard to whether there has been a forfeiture or not.

But because the mortgagee may take possession of the property or recover it by an action of replevin, he is not, on this account, precluded from the right of having it protected in a court of equity.

The case of a mortgage forms an exception to the general rule, that a party shall not be allowed to sue at law and in equity, for the same debt, and a mortgagee may pursue all his remedies at once, yet he is under no obligation to do so.

Where a mortgagee files a bill for the sale of the mortgaged property for the satisfaction of his debt then due, and alleges that it being in the possession of the mortgagor, has been, or is about to be, wasted ; or, where it consists of personalty, is about to be removed beyond the reach of the creditor, a court of equity has and will exercise the power of preventing the threatened mischief, by injunction.

When a motion to dissolve an injunction is heard on bill and answer, so much of the bill as is not denied by the answer is taken for true, and if any one of its material allegations remains unanswered, the injunction will be continued till the final hearing.

When mortgaged property has been turned into money, the rights of the mortgagee remain unaltered by the conversion, and he has a right to have the money applied to the payment of his claim.

———

[The bill filed in this cause, stated, that on the 3d day of January, 1843, Robert Stewart of Anne Arundel county, executed a mortgage of certain real and personal property, the latter consisting partly of slaves, to Henry H. Brown, the complainant, and Thomas M. Camden, to secure them in the sum of $1200, with interest from the 6th May, 1841, and also against any future liabilities, which they might incur in his behalf; that this debt having been reduced, to the sum of $424 88, on the 12th November, 1842, Stewart, on the 21st December, 1843, gave the complainant his single bill therefor, which, together with the statement ascertaining said balance, was filed with the bill of complaint; that since the execution of the mortgage, one of the negroes conveyed by it, had died, and four had been sold out of the state, for about one thousand dollars, the whole or a part of which sum had been deposited in the Farmers Bank of Maryland by the defendant, to his own credit; that he was about to sell other of the negroes and personalty; and that his title to the real property was a courtesy interest, nearly valueless, on account of his advanced age. The complainant alleged his ignorance of the extent to which Camden and himself had been indemnified as securities, as aforesaid, and concluded with a prayer for a discovery on the part of Camden and Stewart relative thereto; for an injunction against the latter, and the Bank; to restrain the one from selling more of the negroes or other personalty, and the other from paying over the proceeds of the former sale to said Stewart's order; and for a sale.

Stewart in his answer, admitted the execution of the mortgage, the correctness of the statement of his debt to the complainant, (with the exception of the credits, to be made on the

12th November, 1842,) the death of one of the negroes; the sale of four, and the deposit to his own credit in the Farmers Bank of Maryland; but denied an intention to sell more of the negroes; the insufficiency of the residue of the property; and his indebtedness to the complainant.

In the statement filed by the complainant, the defendant was credited as of the 12th November, 1842, with a commission of $200, for services rendered, which left a balance of $424 88, for which he gave his single bill as stated above and admitted in the answer, but the answer further stated, that the transaction was a fraud upon the defendant, who, relying upon the correctness of the balance stated by the complainant, had affixed his signature to the instrument without having read it, and denied the sufficiency of the last credit, stating in relation thereto, that on the 21st March, 1840, letters of administration were taken out by said defendant, together with the complainant, upon the estate of Thos. R. Cross, deceased, which is not yet fully administered; that said Cross, in his lifetime, being largely indebted to him, and he being in like manner, indebted to P. McKenna & Co. the two former united in a single bill to the latter, dated 30th January, 1838, for $227 48, with the understanding, that it was to be paid by said Cross, who nevertheless died without having done so, and at April term, 1840, judgments were recovered on this bill, one against said Stewart, as surviving obligor, and another against him and the complainant, as administrators of said Cross. That the sum due on these judgments was paid by the defendant, with the understanding between him and the complainant, that he should be allowed for it, against the estate of the deceased; that although an order to that effect had been passed by the Orphans' Court, the allowance had not been made; and, therefore, that this was now a good *set-off* against the complainant's claim. The answer further stated, that instead of an allowance of $200, for commissions, on the 12th November, 1842, the proper allowance was $392 98, being half the commission allowed by the Orphans' Court, to him and the complainant, as administrators as aforesaid.

8*

The propriety of the allowance of these two credits constitu-
ted the main ground of the defence, made by the defendant, as
their allowance would render the complainant indebted to him
to a small amount.

The complainant excepted to this answer, as not being re-
sponsive to the allegations in the bill, as to the sum for which
the slaves were sold, as to the alleged disposition of other por-
tions of the mortgaged personalty, the deposit of the proceeds
of sale in the said bank; the continuance of a residue of the same
on deposit there; the intention of selling other portions of the
mortgaged property besides the negroes; and the courtesy inter-
est. These exceptions having been argued, together with the
motion to dissolve the injunctions, the Chancellor delivered the
following opinion :]

T H. CHANCELLOR:
With regard to the last of these credits, (the set-off claimed,)
it is sufficient to say, that if the voucher upon which it is
claimed, can hereafter be used as the evidence of a title to re-
imbursement from any one, it can certainly not be set off
against the claim of this complainant founded upon his mort-
gage. If the defendant t ewart, has, in respect of this trans-
action, a claim against any party, it is against the estate of
Thomas R. Cross, upon which letters of administration were
granted to him and the complainant. Surely, the complainant,
Brown, cannot, out of his own estate, be made to pay the
debt of a man upon whose estate he has administered, to his
co-administrator, in a proceeding like the present. If he, the
complainant, be liable exclusively for the payment of this debt,
it is a liability in his representative character, and cannot be
set off against a debt due him in his own right. With respect
to the remaining credit, claimed by this defendant, indepen-
dently of the other objections insisted upon in the argument,
I deem the settlement and the sealed acknowledgment of the
21st December, 1843, as conclusive against it, in the present
state of this case. If the defendant, Stewart, was entitled to
this credit, he was so entitled prior to, and at the date of the

settlement referred to, and unless that settlement, manifested and sanctioned by his hand and seal, can be shown by proof to have been founded upon mistake, or procured by fraud, it must conclude the antecedent transactions between the parties, and more especially those transactions upon which the settlement professes to have acted.

I think it, therefore, very clear, that so far as this defendant has attempted to remove the ground upon which this injunction rests, by attempting to show an extinguishment of the complainant's claim, he has not succeeded, but that the latter must, at least in this stage of the cause, be considered as having a title to sue upon the mortgage.

The object of this bill, as we have seen, is not only to procure a *sale of* the property mortgaged, for the payment of the claim of the complainant, but upon the averment of the sale of a portion thereof, and the apprehended disposition of the residue by the defendant, and the consequent diminution or destruction of the security for the debt, the court was called upon to interpose its conservative power for the protection of the rights of the complainant.

That a mortgagee, prior to the period when he may proceed to foreclose and sell the property mortgaged, may, by a bill in equity, with such averments as are contained in this bill, obtain an injunction as a preventive remedy against the apprehended danger, has been decided by the Court of Appeals. *Clagett et al.* vs. *Salmon,* 5 *G. & J.,* 314. But that court has not decided, nor do I find it, so far as my examination has extended, expressly decided anywhere, that the court will put forth its authority in this way after the debt has become due, and consequently at a period when the mortgagee has a right to ask for a foreclosure and sale of the property. I do not, however, find the contrary to be decided, and it seems to me the administration of justice would be defective if the power invoked by this bill is denied the court.

If a mortgagor in possession is committing waste, equity will restrain him by injunction; though in one case, Lord Thurlow appeared to question the doctrine, upon the notion that the

mortgagee was in fault, in permitting the mortgagor to continue in possession.  *Eden on Injunctions*, 166 ; *Robinson* vs. *Litton*, 38 *Atk.* 210 ; *Fanant* vs. *Lovel, ib.*, 723.

It is true, that it is established in Maryland, that unless there is some agreement between the parties to the contrary, the mortgagee is entitled to the possession of the property, immediately upon the execution of the mortgage, and this without regard to whether there is a forfeiture or not.  *Jamison* vs. *Bruce*, 6 *G. & J.*, 72.  And hence it follows, that though either before or after forfeiture at law, the mortgagee may take possession of the property, or recover it by an action of replevin, he is not on this account precluded from the right of having it protected in this court, until it can be made available by a decree for the payment of the debt charged upon it.

If it be urged, that there is no necessity for the interposition of the court in this case by injunction, because the debt being due, the mortgagor may possess himself of the property by replevin, the answer is, that the same right would exist, though the debt was not due, and in the latter case the Court of Appeals have expressly affirmed the power of this court to preserve the property by injunction.

Though the case of a mortgage forms an exception to the general rule, that a party shall not be allowed to sue in law and in equity for the same debt, and a mortgagee may, without restraint, sue upon all his remedies at once, (having nevertheless but one satisfaction,) yet he is under no obligation to do so, and it would certainly be falling short of the demands of justice, and the exigency of the case, if this court, when the remedy is sought exclusively here, has not the power in a proper case, to protect the subject of the controversy from destruction, while the suit is depending.   3 *Powel on Mortgages*, 966 *and note* 1 ; *Jones* vs. *Conde*, 6 *Johns. Ch. Rep.*, 77.

I am, therefore, of opinion, that when a mortgagee files a bill in equity for a sale of the mortgaged property, for the satisfaction of his debt, being then due, and alleges, that it being in possession of the mortgagor, has been, or is about to be wasted : or where it consists of personalty, is about to be removed be-

yond the reach of the creditor, thus impairing his security; that in such a case this court has the power, by injunction, to prevent the threatened mischief, and preserve the pledge until it can be applied to the purpose, for which, by the contract of the parties, it was destined ; that such a power is indispensable to that complete and full justice which a court of equity is authorised to administer, and should have the means of administering, in all cases within its jurisdiction, without the aid or co-operation of other tribunals.

But, although an injunction may be granted in such a case as is made by this bill, yet it is liable to be dissolved as in other cases, upon the coming in of the answer, if the equity upon which it is founded, is sworn away or denied, and it remains to be seen, whether the equity of this bill is so sworn away.

It has already been remarked, that the attempt to show, that the complainant's claim has been extinguished, is unsuccessful, as the case now stands upon bill and answer, and, therefore, he must be regarded for the purpose of the present motion, as a mortgage creditor, and entitled to all the remedies which rightfully belong to that position. This relation by itself, however, would not have entitled him to an injunction in the first instance, nor would it now entitle him to a continuance of it. He must show, not only that he has a claim as mortgagee, but that without the prompt intervention of this court by injunction, he would, by the wrongful and fraudulent act of his debtor, be deprived of his security. This was done by the bill, and after a careful examination of the answer, I am of opinion, that some of the material allegations of the former are neither admitted nor denied, and consequently the injunction must be continued.

It is settled that when a motion to dissolve an injuction is heard on bill and answer, so much of the bill as is not denied by the answer, is taken for true, and that if any one of its material allegations remains unanswered, the injunction will be continued till the final hearing, because in such a case, the equity upon which the injunction issued is not sworn away.

I am of opinion, that the complainant's second, third, fourth, fifth and sixth exceptions to the answer of Stewart are

well taken.    The second, fifth and sixth relate to acts or intentions imputed to defendant impairing, or showing the inadequacy of the security, and they are not answered explicitly and frankly as they should be.

The allegations in the bill, upon which the third, and fourth exceptions are founded, relate to the application, and present position of the money for which the mortgaged slaves were sold. It was certainly material to trace this money, and discover where it is deposited, as otherwise it could not be applied at the proper time, to the payment of the claim of the complainant, should such payment hereafter be decreed.    The right of the complainant to have such application made, depends upon whether the money alleged to be in the bank, arose from the sales of the slaves, or other property included in the mortgage.    The bill so alleges, but the answer instead of admitting or denying this allegation, by which the money in bank could be identified with that which the defendant received from the sales of the slaves, which he confesses he sold, states that he applied the money to his, the defendant's own use.    Now this identity of the money in bank, is an important fact, for upon it depends the right of the complainant, to have it appropriated specifically to the payment of his claim, the principle being, that when mortgaged property is turned into money, the mortgagee, has a right to have it applied to the payment of his claim ; his rights remaining unaltered by the conversion of the property into money,    *Astor* vs. *Miller*, 2 *Paige*, 68.

For these reasons, I am of opinion, that the injunction must be continued, and shall so order.

[No appeal was taken from this order.]