LEWIS et al, v. DILLARD et al.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1896.)

No. 711.

1 EXECUTION—WRONGFUL LEVY—RIGHTS UNDER.

When a marshal, in levying execution, forcibly takes property out of the possession of a constable who has levied thereon under a distress warrant, or of a pledgee for the benefit of third persons, such action is illegal, and the judgment creditor acquires no right to or lien upon the property.

2. SAME—EXEMPT PROPERTY.

The fact that a constable has levied a distress warrant on mortgaged chattels, which by the law of the state cannot be seized on execution against the mortgagor, does not justify a marshal in taking the property out of the possession of the constable, and levying an execution on it.

3. RIGHTS OF CREDITORS—SALE UNDER AGREEMENT—EFFECT ON CREDITOR NOT A PARTY THERETO.

Where property which has come into the possession of parties claiming liens is sold under an agreement between some of them that, after paying a mortgage, the balance of the proceeds shall be paid into court, to await the result of litigation as to which of the claimants is entitled to it, the legal title to such balance vests in the owner of the property, subject to any liens which may have been acquired, and the rights of one of the claimants who was not a party to the agreement cannot be prejudiced thereby.

4. PLEDGES—RIGHTS OF PLEDGEE—SEIZURE OF PLEDGE.

The actual delivery of property by the owner to an agent of his bondsmen, with authority to sell and apply the proceeds to the extinguishment of any liability of theirs as his sureties, constitutes a valid pledge; and the pledgee acquires a superior right to the property and its proceeds, as against all persons except those holding prior liens, which cannot be divested by his being wrongfully deprived of the possession thereof.

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

W. F. Werner was the collector of the public revenue of the county of Crittenden, in the state of Arkansas; and, being unable to settle his accounts as such collector in the time and mode required by law, he signed and delivered to his bondsmen on the 26th of July, 1893, the following paper:

"Gayoso Hotel, Memphis, Tenn., July 26, 1893.

"Assets of W. F. Werner.

| | |
|---|---|
| 21 head of mules | 1,000 |
| Farming utensils | 100 |
| 3 four-horse wagons | 100 |
| 1 buggy | 75 |
| 1 surrey | 50 |

| | |
|---|---|
| 2 horses | 100 |
| 25 hogs, more or less | 60 |
| 20 head of cattle, more or less | 100 |
| 1 jackass | 100 |
| 500 acres of cotton, more or less | 2,000 |
| 100 acres of corn, more or less | 400 |

"$500 due me by citizens of Crittenden county, more or less. $5,000.00 interest in Crittenden county scrip, held by Jno. (mortgaged for $3,500.00) Armestead. $500 due me in Crittenden Co. scrip, more or less, by citizens of Crittenden Co. W. F. Werner."

On the 28th of July, 1893, Werner delivered the possession of all the property mentioned in this paper to C. L. Lewis, as trustee and pledgee for Werner's bondsmen, with authority to him to sell the same, and to gather and sell the crops of cotton and corn, and appropriate the proceeds of the sale to the payment of Werner's indebtedness to the school fund of Crittenden county, for which the sureties on his official bond were liable. On the 23d day of August, 1893, a distress warrant was issued by the auditor of the state, addressed to the constable of Jasper township, Crittenden county, which recited, in substance, that there was due to the state from Werner, as collector of the public revenue, the sum of $16,378.76, and commanding the constable to levy and sell the goods and chattels, lands and tenements, of Werner and his sureties (naming them), to satisfy the sum due the state. The property, the proceeds of which are here in controversy, was duly levied upon by the constable under this distress warrant; and while the same was in his possession by virtue of such levy the possession was forcibly taken from him on the 15th of September, 1893, by the United States marshal, who proceeded to levy on the property an execution issued on a judgment against Werner, and in favor of Cochran. The judgment in favor of Cochran was recovered on March 20, 1893, for $12,018.30. On July 29, 1893, execution was issued on this judgment, and came into the hands of the marshal the same day, and on the 15th of September, 1893, was levied on the property, the proceeds of which are here in dispute; the marshal taking the property from the possession of the constable for the purpose of making such levy, as before stated. Dillard & Coffin had a deed of trust or chattel mortgage on all the property mentioned, which was prior in date and superior to the claim of all the parties to this suit. At this stage of affairs, Cochran, Lewis (Werner's bondsmen), and Dillard & Coffin entered into an agreement, on the 19th of September, 1893, which, after reciting in substance the foregoing claims of the parties, and also the further fact that the state of Arkansas was asserting a right to subject the property mentioned to payment of the debt due the state from Werner in his official capacity, as collector of the public revenue, provided that the marshal, by his deputy, Bowen, might continue in possession of the property, gather and sell the crops of cotton and corn, and sell the other property, and pay the proceeds, less certain costs and charges and the rent on the land, to Dillard & Coffin, who, after satisfying their own mortgage debt against Werner, were to pay the remainder into the registry of the United States circuit court for the Eastern division of the Eastern district of Arkansas, there "to await the determination as to whom the property belongs; it being hereby expressly agreed that the rights of the parties hereto, respectively, are preserved, it being the intention of this instrument merely to avoid costs and expenses, and obtain the largest amount of money possible, over which the said Cochran, Lewis, and the state of Arkansas may litigate their rights. * * *" The property was sold, and the proceeds applied as provided in the agreement. Dillard & Coffin's debt was satisfied in full, and they paid into the registry of the court the remaining proceeds of the sale of the property, amounting to $2,069.77. This bill was filed on the 1st of December, 1894, by Cochran, the appellee. Lewis, one Morris, and Werner are made defendants. The bill alleges that the appellee is entitled to the fund in the registry of the court by virtue of the levy by the marshal of the execution issued on the Cochran judgment. Lewis answered, denying the complainant's right to the fund, and setting up a claim thereto as trustee and pledgee for Werner's sureties on his official bond. The state of Arkansas, by leave of the court, intervened, and set up a claim to the fund

by virtue of the issuance and levy of the auditor's distress warrant on the property. So that there are three claimants to the fund in the registry. Cochran claims it upon the ground that he acquired a lien on the property by the levy of his execution thereon, Lewis claims it as trustee and pledgee for Werner's sureties on his official bond, and the state of Arkansas claims it by virtue of the levy thereon of the distress warrant issued by the auditor against Werner as a defaulting collector of the public revenue. The court below decreed that the fund belonged to Cochran, and Lewis and the state of Arkansas appealed.

W. G. Weatherford, for appellants.

John J. and E. C. Hornor, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Under the agreement, the rights and liens of the parties attached to the proceeds of the sale now in the registry of the court, in the same manner, in the same order, and with the same effect as they bound the property before the sales were made. Markey v. Langley, 92 U. S. 142, 155; Astor v. Miller, 2 Paige, 68; Sweet v. Jacocks, 6 Paige, 355; Brown v. Stewart, 1 Md. Ch. 87; Olcott v. Bynum, 17 Wall. 63. At the time the marshal attempted to levy the Cochran execution on the property, it was either in the actual possession of the constable, under and by virtue of the levy thereon of the auditor's distress warrant, or in possession of Lewis as agent and pledgee for Werner's bondsmen. Whether the constable or Lewis had the possession of the property, the action of the marshal in forcibly taking the possession and levying the Cochran execution thereon was illegal, and Cochran acquired no right to or lien upon the property by virtue of that action. Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, and citations. Conceding that the rule in Arkansas is that mortgaged chattels cannot be seized and sold on execution against the mortgagor (Jennings v. McIlroy, 42 Ark. 236), and that there was a mortgage on these chattels at the time the constable took them in execution on the distress warrant, that gave the marshal no right to take the property out of the possession of the constable, and levy the Cochran execution upon it. The distress warrant had the force and effect of an execution issued on a judgment at law. Sand. & H. Dig. Ark. §§ 6655–6664. Moreover, if the chattel mortgage prevented the constable from making a valid levy of the distress warrant upon the property, it was equally an obstacle in the way of the marshal making such a levy. The marshal had no jurisdiction to pass upon the validity of the constable's levy. So long as the constable was in the actual possession of the property, holding it under the levy of the distress warrant, the marshal could not disturb that possession, or make any levy upon the property. It does not appear that the mortgagees objected to the levy of the distress warrant. The marshal did not represent the mortgagees, but was seeking to do precisely what it is said the constable had done, namely, levy an execution on the property, regardless of the mortgage. If, therefore, any prior right or lien could be acquired by the levy of an execution on

the property while it was under mortgage, that right or lien was acquired by the state by virtue of the levy of the distress warrant.

The rule in Arkansas is that, when there are several executions against the same defendant at the same time, the officer who succeeds in making the first levy thereby obtains priority for his writ, and secures it the right to be first paid out of the proceeds of the sale, without regard to the date of the writs, or the time they came into the officers' hands. Derrick v. Cole, 60 Ark. 394, 30 S. W. 760. By wrongfully taking the property out of the possession of the constable, Cochran gained no right, and the state lost none. But it is said that the state was not a party to the agreement for the sale of the property, and therefore could make no claim to the proceeds. It is true, the agreement is not signed by any one on behalf of the state, but it recites that the state of Arkansas is asserting a right to subject the property to the payment of the amount due her from Werner as collector, and contains an express provision that "Cochran, Lewis, and the state of Arkansas may litigate their rights" to the fund derived from the sale of the property. Moreover, if the state had not been mentioned in the agreement, her rights would not have been prejudiced thereby; for an agreement between Cochran and Lewis, two of the rival claimants of the property, could not have the effect to prejudice the rights of the state. The agreement put an end to a further race of diligence between the several claimants. Each claimant to the property was to have the benefit of the rights and liens he had acquired up to that date, and whoever was found, in a proper proceeding instituted for that purpose, to have acquired the prior or better right to the property, would be entitled to the proceeds of its sale, in the registry of the court. After this agreement was entered into, the appellee filed this bill for the purpose of having the rights of the parties to the fund determined. By this act the appellee acquired no new or additional lien or right to the property or its proceeds. It is such a proceeding as the agreement contemplated should be instituted by some one of the claimants to the fund. The judgment creditor who first files a bill and secures service of process in the suit to set aside fraudulent conveyances of the judgment debtor's property, or to discover assets, thereby establishes a lien upon the property mentioned in the bill, and is entitled to priority over other creditors in the distribution of the fund derived from such property. Kimberling v. Hartly, 1 McCrary, 136, 1 Fed. 571. But there is no analogy between such a proceeding and the suit at bar. Here the fund was already in court, and the object of the bill was to determine which of the rival creditors had the better right to it. The fund was not brought into court through the action of any single creditor, but by the joint agreement of all. Before the bill was filed, the property had been sold, the mortgage debt discharged, and the surplus proceeds paid into the registry of the court. After the extinguishment of the mortgage debt, the appellee could not maintain a bill in equity to subject the property or its proceeds to the payment of his judgment, on the theory that Werner had only an equitable estate therein, that could not be reached in any

other mode. When the mortgage debt was extinguished, Werner at once became possessed of the legal title to the remaining property, or its proceeds, subject to any valid claim or lien thereon acquired by Lewis, Cochran, or the state.

It remains to consider the rights of Lewis as trustee and pledgee for the bondsmen of Werner. A contract of pledge need not be in writing. It depends for its validity on delivery and possession of the property. The delivery of the property may be to an agent or trustee who may hold the possession for the pledgee, and the pledge may be given to secure the pledgee against a liability as surety for the pledgor, as well as for an existing debt. Jones, Pledges, §§ 5, 34, 35. The actual delivery of the property by Werner to Lewis, as agent for the bondsmen of Werner, to secure them against liability as sureties on his official bond, without authority to the agent to sell the property and apply the proceeds towards the extinguishment of such liability, constituted a valid pledge of the property. That the possession of the property passed to the pledgee is not controverted. It does not appear that the mortgagees objected to this pledge of the property. The learned counsel for the appellee say in their brief that "Lewis, as trustee, was in possession at the time of the marshal's levy." The marshal could not rightfully disturb that possession. At common law, goods held in pledge could not be attached or taken in execution in an action against the pledgor. Jones, Pledges, § 372. The common law on this subject obtains in Arkansas. Patterson v. Harland, 7 Ark. 158; Jennings v. McIlroy, 42 Ark. 236. From the very nature of the contract of pledge, the pledgee has a right to hold the pledge undisturbed until it is redeemed. Yeatman v. Savings Inst., 95 U. S. 764. It follows from these well-settled principles that Lewis, as trustee and pledgee, had the prior and superior right to the property and its proceeds, as against all persons except the mortgagees; and, the mortgage debt having been extinguished, he now has the right, as trustee and pledgee, to the remaining proceeds of the sale of the property. Having been wrongfully deprived of the possession of the property by the appellee, he did not thereby lose his right in equity, as against the appellee, to the property or its proceeds. If the liability of the sureties of Werner for which the property was pledged has been discharged, the direction given below for the decree to be rendered by the circuit court will not have the effect to deprive the appellee or the state from showing that fact, and subjecting the fund in court to the payment of their demands by a proper proceeding for that purpose.

To conclude, the claimants to the fund are entitled to rank in the following order: (1) C. L. Lewis, as agent and pledgee of the property for the sureties on the official bond of Werner, is entitled to the fund to indemnify the sureties for any sum they have paid, or are liable to pay, as such sureties. (2) If the fund, or any portion thereof, remains after discharging the liability for which the property was pledged to Lewis, the state of Arkansas is entitled to the same on account of the sum due the state from Werner as collector of the revenue for which the distress warrant was levied on the property.

(3) If the fund, or any portion of it, remains after satisfying the claims of Lewis and the state of Arkansas, Cochran, the appellee, is entitled to the same on his execution issued on his judgment against Werner. The decree of the circuit court is reversed, and the case remanded with directions to that court to render a decree directing that the fund be paid to the claimants according to their priority of right thereto as declared in this opinion.