ELECTRICAL SUPPLY CO. v. PUT-IN-BAY WATERWORKS, LIGHT & RAILWAY CO. et al.

(Circuit Court, N. D. Ohio, W. D. January 31, 1898.)

No. 1,087

1. EQUITY—DISMISSAL OF BILL—RECEIVERS' CERTIFICATES.

When a circuit court of the United States takes and exercises jurisdiction upon a record apparently authorizing it, and orders the issuance of receiver's certificates, which are sold to bona fide purchasers, and it subsequently appears that by reason of collusion of the parties in bringing the suit the jurisdiction is defective, and the cause must therefore be dismissed, the court nevertheless has power, as a preliminary to dismissing it, to protect the receiver's certificates by directing a sale of so much of the property in the receiver's hands as may be necessary for that purpose.

2. SAME—INTERVENING PETITIONS.

A court of equity, in which intervening petitions are filed, asserting liens upon or interests in property which it has placed in the hands of a receiver in an original suit, may retain jurisdiction of such interventions, even though it subsequently appears that the original suit was collusively brought, and should have been dismissed at the outset, had the facts then been made to appear.

This was a suit in equity by the Electrical Supply Company against the Put-in-Bay Waterworks, Light & Railway Company and others.

T. J. Corkery, E. W. Tolerton, and M. G. Block, for plaintiff.

E. G. Love, for defendant company.

C. T. Lewis, for receiver.

L. K. Parks and J. K. Hamilton, for Arbuckle, Ryan & Co.

W. C. Cochran, for Walker P. Hall.

C. G. Wilson, for Treasurer Ottawa Co

SEVERENS, District Judge. The court, having passed certain orders in this case, confirming the masters' reports upon the reference to Irvin Belford, Esq., as special master, and upon the later reference to William H. Harris, as special master, and, having also adjudged certain receiver's certificates held by Walker P. Hall and another to be valid, and rightfully payable out of the funds and property in the hands of the court by its receiver, it thereupon appears that there is not a sufficient available fund in the hands of the receiver with which to satisfy the receiver's certificates and other necessary charges upon the fund. It therefore appears to be necessary to sell the railroad and the other real estate and fixtures belonging to the works of the Put-in-Bay Water-

works, Light & Railway Company, in order to raise a fund necessary to completely satisfy the charges.    This brings the court to the necessity of determining certain other matters which have inhered in the case all along, but which it has not hitherto been found to be necessary to finally dispose of, the action of the court having been in the main concerned with a question as to how the court could so shape the proceedings as to enable it to dismiss the original bill as one collusively and fraudulently filed.    The matters now particularly referred to as standing in the way of final disposition by sale of the property are the petitions of Arbuckle, Ryan & Co. and others having like claims for the enforcement of liens against the property in the hands of the receiver for materials and labor supplied to the Put-in-Bay Waterworks, Light & Railway Company, and certain petitions which have been filed in behalf of the county in which the property is situated for the taxes which have been levied upon it during the time it has been in the hands of the receiver.    These parties are now pressing the court for recognition of their claims, and for an adjudication establishing their rights in the property now in the hands of the court.    The original bill was filed September 9, 1892, and the property was soon after taken into custody by the appointment of a receiver.    On the following 30th day of September, Arbuckle, Ryan & Co. filed what is called their cross bill, which is, in substance, an intervening petition setting up their contract with the Put-in-Bay Waterworks, Light & Railway Company, and the amount of labor and material which they had furnished in the execution of it, and their compliance with the statutory requirements of the state giving them a lien; and they prayed therein for the enforcement of their lien.    Other cross bills of a like character were filed by other parties, and later on, and during the pendency of the suit, petitions for orders requiring the payment of taxes have been filed.    Some three or four months after the filing of the original bill and the various cross bills, and after the receiver had been authorized to issue receiver's certificates, and had in fact issued and sold them, and after the receiver had been for some months in possession, it appeared, on a motion to dissolve the injunction theretofore ordered, heard in the late days of December, 1892, mainly through an affidavit submitted on that occasion, that the suit had been collusively brought; or, to be more exact, an affidavit was then filed upon which, in the court of appeals, a year later, it was held that the proceeding was collusive, and by plain inference that the court below should have dismissed it on the facts as they appeared upon the hearing had in the circuit court when the motion to dissolve the injunction was refused.    It was for that reason that the circuit court of appeals reversed the order of this court refusing to dissolve the injunction.    Industrial & Mining Guaranty Co. v. Electrical Supply Co., 16 U. S. App. 196, 7 C. C. A. 471, and 58 Fed. 732.    But this court, although fully recognizing what it has deemed its duty under the decision of the court of appeals, and although it has been endeavoring to bring the case into such a condition as that the cause could be dismissed for the reasons stated by the circuit court of appeals, has nevertheless retained the possession of the property in the hands of the receiver, and this against repeated motions of the Put-in-Bay Waterworks, Light & Railway Company to dismiss the bill.    While

recognizing that the court had no jurisdiction to proceed and decree the relief prayed upon the original bill because of the collusion of the parties, it still had jurisdiction to remedy the mischief which had been wrought by taking and exercising jurisdiction, and to prevent persons who had acted in good faith upon the action of the court, while it was in possession of apparent jurisdiction, from suffering injury. Under orders of the court made for that purpose, the property has been yearly rented by the receiver, and the proceeds paid into court. In a collateral way these dependent petitions or cross bills have been mentioned to the court, and the court has intimated a strong impression that, having no power to proceed in the main case, and as the bill must be dismissed, it would follow that everything which was incident to it must go down also; in other words, that the jurisdiction of the court which it still retained was a jurisdiction supported by the necessity of providing relief to those who had acted upon the faith of the court's orders, and that the court's authority would be limited to that necessity. But upon more mature consideration I am satisfied that it is the duty of the court to take cognizance of the intervening petitions above referred to, and to determine the validity of the claims therein asserted, and, if found valid, to give them due effect by affording the petitioners appropriate relief. If no question had arisen in regard to the jurisdiction of the court over the principal case, there could be no doubt whatever of the right of the interveners to apply to this court, it having possession and control of the property upon which the liens and claims rest, for the relief to which they were entitled. The fact that there was a latent infirmity in the jurisdiction, arising from the unlawful conduct of the parties in instituting the suit, does not, in my opinion, change the result. The court did in fact entertain the bill and the cross bill of the original defendant, Tillotson, made an order for the appointment of a receiver, and seized the property into its possession. That possession it has ever since maintained, and still maintains, originally for the general purposes of the case, and more recently for the purpose of exercising the limited jurisdiction still asserted and exercised by the court for the special object already indicated. If this question be considered upon the grounds of the right of a third party to intervene for the protection of his own interest in a pending suit, it would seem to be immaterial whether the possession of the property which the court has taken into custody was rightful or not, or whether the maintenance of possession could be justified upon legal grounds. It is the fact of the actual possession which the court has taken, and that alone, which gives to the intervener his right to appear and be heard, and to have his rights in the property ascertained and awarded to him.

In the case of Gumbel v. Pitkin, 124 U. S. 131, 8 Sup. Ct. 379, the property taken into the possession of the court by its marshal was seized upon process which was void, and in a suit illegally commenced, the suit having been brought and the process issued on a Sunday, in violation of an express statute. The possession which the marshal afterwards retained under his writ, as the court afterwards held, was unlawful, and he was a trespasser. Nevertheless, it was held by the supreme court that the court below had the power, and it was its duty,

to entertain the petition of a third party to be let into that court and in that case to claim and obtain through its action the rights which he had acquired by a levy made subsequently to the first unlawful seizure, but prior to certain other levies which had been made.   That case illustrates in a very forcible manner the fact that the question of the lawfulness or unlawfulness of the holding of possession by the court is wholly immaterial.   And see, also, Lewis v. Dillard, 22 C. C. A. 488, 76 Fed. 688; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355.

In the case of Compton v. Jesup, 15 C. C. A. 397, 68 Fed. 263, a dependent bill was filed by Jesup and Knox to foreclose a mortgage which was prior to a mortgage which had been in process of foreclosure in the original case.   The proceedings in the original case had been carried through to a final decree, and sales of the mortgaged property, and those sales had been confirmed, and deeds ordered to be executed; but the court retained possession for the sole purpose of protecting certain interests of the parties to the original litigation.   It was at this state of the case that Jesup and Knox intervened.   If their right to intervene had been determined upon the ground of citizenship, it could not have been allowed, and it was objected that, as the title to the property had already passed to the purchasers, and the object of the suit substantially accomplished, the petitioners had no right to intervene. The court held them entitled to intervene, and entertained their bill. One of the questions arising on the appeal in the circuit court of appeals was whether the right to intervene had been properly allowed. Judge Taft, in a very carefully prepared opinion, reviewed the authorities upon this subject, and by reference to that part of his opinion found at page 412 et seq., 15 C. C. A., and page 278, 68 Fed., it is quite clear that the determination of the question of the right to intervene depends not at all upon the validity of the original seizure or continued possession of the property by the court, but upon the fact of the actual holding in possession.   The grounds upon which the doctrine seems to rest are:   First, the necessity which the court is under to defend its possession, and hold the property subject to its order; and, second, the obligation it thereby assumes to itself ·undertake the affording of redress to those whom it prevents, by withholding the property, from obtaining relief elsewhere.   It appears to me that the case of Gumbel v. Pitkin goes much further than the requirements of the present case, for here beyond doubt the appointment of the receiver, and taking the property into custody, was a perfectly lawful and justifiable act upon the facts as they then appeared in the record, and it is also clear, in my opinion, that the retention of possession, although for a limited purpose, is likewise lawful and proper.   It can make no difference whatever to the parties who are prevented from seeking to enforce their claims upon property elsewhere with what intent or purpose this court continues its possession.   For these reasons, I am persuaded that it is the duty of the court to accord a right to a hearing to the several parties who have intervened.   Such orders as are necessary to expedite the proceedings may be entered.