## EVANS *et ux.* v. BROOKS *et ux.*

No. 1836.    Opinion Filed May 14, 1912.

(124 Pac. 599.)

1. **APPEAL AND ERROR—Review—Findings of Referee.** Under section 5812, Comp. Laws of 1909, where the referee is to report the facts, the report has the effect of a special verdict; and if such findings are reasonably supported by the evidence they will not be disturbed by this court.

2. **CANCELLATION OF INSTRUMENTS — Action to Rescind — Laches.** In an action to rescind a contract on the ground of fraud, where a period of seven or eight months has elapsed between the date of discovery of the fraud and the institution of the suit, and where the delay has been caused solely by the fraudulent acts of defendant, the plaintiff is not precluded of his right of rescission by the rule ''that he must bring his action within a reasonable time after the discovery of the fraud.''

3. **CONTRACTS — Rescission.** The rule that a court of equity will not decree a rescission of a contract, unless plaintiff is able to place defendant in statu quo, will not be enforced, where, by the fraudulent acts of defendant, plaintiff has been rendered wholly unable to do so, and where plaintiff tenders back defendant's deed and offers to compensate him in such damages as may be adjudged due him by the court.

(Syllabus by Harrison, C.)

*Error from District Court, Kingfisher County;*
*A. H. Huston, Judge.*

Action by George W. Brooks and Emma Brooks, his wife, against T. L. Evans and Susan Evans, his wife. Judgment for plaintiffs, and defendants bring error. Affirmed.

*Geo. L. Bowman,* for plaintiffs in error.

*Robberts & Curran,* for defendants in error.

Opinion by HARRISON, C. This action was begun in the district court of Kingfisher county August 8, 1906, by George W. Brooks and wife against T. L. Evans and wife upon petition, which, as subsequently amended, alleged in substance: That on November 22, 1905, Brooks and wife were the owners of a cer-

tain 160-acre tract of land, situated in Kingfisher county, of the value of $4,500. That they were also owners of certain personal property, consisting of horses, cattle, farm implements, household goods, provisions, and feed stuff for stock. That about this time one N. Jamison, a real estate broker, acting for defendants Evans, represented to Brooks that Evans owned two certain tracts of land, situated in Wayne county, Mo., one containing 140 acres and one 40 acres; that Evans also owned certain personal property, consisting of horses, cattle, farm implements, household goods, provisions, and feed stuff, and proposed an exchange of property on conditions set out in the proposition; that said. Jamison, as agent of Evans, representing to Brooks that Evans' 40-acre tract had a good six-room house, well finished, good bearing orchard, good young orchard, a good cistern, good outbuildings, 30 acres in cultivation, all of which was good farming land, situated three miles from a station on the Frisco Railroad; also representing that Evans' 140-acre tract was unimproved land, heavily timbered, but was good tillable land, well suited for agricultural purposes, and that said land was worth $2,400 in cash; also that the personal property of Evans was of a certain character, describing it, leading Brooks to believe that it was in value about the same as Brooks' personal property. Subsequently Evans came to Kingfisher county, and in company with his agent, Jamison, visited Brooks' home, looked at Brooks' farm and personal property, and reiterated the representations formerly made by Jamison to Brooks as to the value and character of Evans' property; Evans going into detail as to the character and worth of his property, and Jamison corroborating such representations. That upon such representations, relying on same as being true, and upon the assurance of both Jamison and Evans that such representations were true, and that the property was just as they had represented it, Brooks was induced to enter into a contract of sale or exchange of property, Brooks to deed his real estate to Evans, and Evans to deed his real estate to Brooks, and the deal was so far consummated that each party executed a warranty deed to the other to the real estate and agreed to an exchange of personal property, provided

Evans' property should be found to be as represented. But the deeds were to be placed in escrow until Brooks had an opportunity to go to Missouri and examine Evans' property, and if he found it to be as represented, then that Evans' deed should be delivered to Brooks, and Brooks' deed delivered to Evans.

It was also alleged: That Evans agreed to pay Brooks' expenses to Missouri, and, in the event Evans' property was found not to be as represented, that Brooks' expenses, including attorney's fees, if any litigation should grow out of the transaction, should be paid by Evans. That subsequently thereto Brooks went to Missouri to inspect Evans' property, relying on the truthfulness of the representations made to him by Evans and Jamison and the consequent final consummation of the contract, took his family with him, fully expecting to find the property as represented, and that the deeds held in escrow would be delivered to the proper parties. That when he arrived on the premises in Missouri he found the 40-acre tract to be rough, rocky, and wholly unfit for and utterly impossible of cultivation, except in a few small spots. Also found that the house was not the sort of a house it was represented to be. That it was in a dilapidated state, needing repairs; that the roof was made of clapboards, the windows out, and rooms unfinished; that the other improvements, consisting of cistern and outbuildings, were wholly worthless; that the cistern was a cave-in hole in the ground, with no water in it; that the old orchard was decayed and nonbearing; that all the trees in the young orchard were dead, except one; that the stock and farm implements were in no wise as represented; that there was comparatively no furniture in the house, and what there was almost worthless; that there were no provisions as represented, and absolutely no feed for the stock. That the 140-acre tract, instead of being of a good character of soil and heavily timbered, was wholly worthless for agricultural purposes, being cut up with hills and canyons, all of it being rocky, devoid of soil, and, instead of being heavily timbered, was covered with jack oak brush, containing no timber of any value. That upon the first meeting with Evans after arriving in Missouri he stated to Evans that none of the property was what it had been repre-

sented to be, neither the land, improvements, nor any item of the personal property, and that he would not go further toward the consummation of the trade, and then offered to return Evans' unrecorded deed and demanded a return of his deed. That Evans declined to rescind, and avoided further discussion of the matter by one delay and another, never positively declining to rescind, but leading Brooks, by one promise and another, to believe that things would finally be made right, until finally, within a few days after Brooks had arrived in Missouri, Evans and his family, without any knowledge on Brooks' part that he intended to do so, secretly left Missouri, came to Oklahoma, and took charge of Brooks' property, leaving Brooks in Missouri in charge of Evans' property, and in a destitute condition.

It is further alleged that Brooks was without money, without any feed for what stock he found there, without any provisions to live upon, without any bedding to sleep upon; that upon discovering the fact that Evans had left Missouri and moved to Oklahoma and taken charge of his (Brooks') property he began to write to the agent, Jamison, whom he had known for a long time and had previously regarded as an honest and truthful man, as to the condition of affairs, and of his demand for return of the deed; that, having no money and being in the condition in which he found himself and family, he was compelled to sell a portion of the personal property in order to buy feed for what stock there was and provisions for himself and family; that, being unable to bring about an adjustment of the matter, he finally sold enough of the stock to enable him and his family to come back to Oklahoma.

The petition also alleged that, because of the circumstances in which he was placed by the misrepresentations of Evans, he was unable to place Evans *in statu quo* as to the personal property, but made a tender of his deed, and further offered, if so adjudged by the court, to make a quitclaim deed to the Evans property; also offered to make whatever reparation to defendant that might be adjudged due him by the court, and prayed for a rescission of the entire contract and return of the deed to his land. The defendant answered, denying the allegations in the

petition, and setting out specifically the items of personal property included in the exchange.

At a subsequent term of court, a trial was had before Hon. C. F. Irwin, judge, resulting in judgment for defendants, which judgment was, by agreement of the parties, set aside and a second trial ordered. At a subsequent term, a second trial was had, at which each party was present in person and by attorney, and each party offered evidence, and after the evidence was all taken and the case closed the court took the matter under advisement. But before a decision was rendered by Judge Irwin statehood intervened, Hon. A. H. Huston had been elected judge of the judicial district of which Kingfisher county formed a part, and at a term of court after statehood it was agreed by the parties that a reference should be had, and that, inasmuch as the Hon. C. F. Irwin had heard the testimony in the case, and had the record of the case, he should be appointed referee; whereupon a reference was ordered and Hon. C. F. Irwin appointed referee to report the findings of fact and conclusions of law.

In due time thereafter, the referee filed his report of findings of fact and conclusions of law, which findings of fact in effect were that plaintiffs had fully maintained the allegations in the petition; that the contract for an exchange of property had been brought about by certain representations of the defendant Evans, and his agent Jamison, as to the value of Evans' property, and that such representations were wholly false and fraudulent, for that none of the property was as it had been represented; that the two tracts of Evans' land were not worth to exceed $600; that the conditions of the improvements were as alleged in plaintiffs' petition.

On the fact of Brooks' arrival in Missouri and his remaining there, the referee, in paragraph 19 of his report, says:

"The evidence shows, and I so find, that when plaintiffs arrived on the land in Missouri they were destitute, and had but little, if any, means of support; that they had no money or other means of support, and nothing in their possession out of which they could procure a living, except the property left on the Missouri premises by the defendants, and that they were unable, for want of means, to return to Oklahoma, and were compelled

to remain on the Evans land temporarily, and also to dispose of the property left on the place by Evans, for their support and the care and keeping of said property; and I find that plaintiffs were reduced and brought to their destitute condition by the wrongful and fraudulent acts of the defendants in this case, and that they did dispose of said personal property for the purpose of paying their personal expenses, and for the care and keeping of the Evans stock, which was wrongfully left in their possession by the defendants, and for the further purpose of obtaining money to return to Oklahoma, and that all of the property left by Evans in Missouri was exhausted by the plaintiffs for the purpose hereinabove stated."

Also, in section 21 of his report, the referee finds as follows:

"I find that the plaintiffs have sustained damages in the sum of $200, over and above all the cash and personal property received by them from the defendants, because of the said wrongful acts and false and fraudulent representations made by said defendants to the plaintiffs."

In addition to these findings of fact, the referee reported the following conclusions of law:

"I conclude, as a matter of law:

"(1)    That under the facts as found in this case the plaintiffs were not bound to return to the defendants the money and personal property received by them, as a condition precedent to the commencement of this suit, and that the suit can be maintained, and the equities between the parties adjusted in this case, even though plaintiffs were unable to place the defendants *in statu quo,* so far as it relates to the personal property in controversy.

"(2)    That the offer of the plaintiffs to return the deeds to the defendants before they left the state of Missouri, and a renewal of that tender in the plaintiffs' petition, with the further offer of the plaintiffs, in open court, to return the unrecorded deeds to the Missouri land, or, if required by the court, to quitclaim said lands to the defendants, is a sufficient tender or offer to place the defendants *in statu quo,* so far as it relates to the real estate.

"(3)    The general offer of plaintiffs in the petition and in open court to account to the defendants for all money and other property received by them from defendants is a sufficient offer to entitle the plaintiffs to a rescission of the contract under such equitable terms as may seem just and proper to the court.

"(4)   That the deed from George W. Brooks and Emma Brooks to T. L. Evans for the S. E. ¼ of section nine (9), township nineteen (19), range five (5) W. I. M., in Kingfisher county, Okla., was obtained through fraudulent representations of the said defendants, and is fraudulent and void, and that the same should be canceled and set aside and the contract rescinded, and the title to said land forever quieted and settled in the plaintiff George W. Brooks, and that the said plaintiffs should be restored to the possession of said land, and that the said plaintiffs should have and recover judgment against the defendant T. L. Evans in the sum of $200 and costs of suit.

"(5)   That the money in the hands of the receiver, J. B. Davis, after paying the expenses of the receivership, should be turned into court and applied to the payment of the costs in this case."

This report of the referee was confirmed by the district court of Kingfisher county on the 19th day of October, 1909, Hon. A. H. Huston, judge, and judgment rendered thereon, from which judgment Evans appeals the case to this court upon nine assignments of error. However, only the sixth, seventh, eighth, and ninth assignments are discussed in the brief of plaintiff in error, which assignments are as follows:

"(6)   Said court erred in refusing and ruling out competent and legal evidence on the part of plaintiff in error.

"(7)   Said court erred in not finding for the plaintiff in error and against the defendant in error upon the evidence submitted in said cause.

"(8)   Said court erred in finding in favor of the defendant in error, because there was not sufficient evidence to support said finding.

"(9)   Said court erred in sustaining the report of the referee."

The sixth assignment of error is based upon the following ruling of the court:   The witness W. J. Bailey, being called to testify in behalf of defendant Evans, was asked the following question:

"What would you say, from your knowledge of the 40 acres, what its fair market value was when the trade was made in 1905, somewhere between November 2 and December 30, 1905? Answer:   I would have to answer that by imputation as to values.   As I stated, I am not personally acquainted with it, and having only seen the place one time; but judging from conversa-

tion—while I lived within four miles of the place for eighteen years, I would say the place was worth about $1,000 in cash."

A motion to strike out this answer as incompetent was sustained by the court. In this ruling of the court, we see no error. The witness was clearly incompetent to testify as to the value of the land. It is shown from his own statement that personally he did not know the value of same.

The seventh, eighth, and ninth assignments are properly treated under one head, as they all go to the questions whether there was sufficient evidence to sustain the judgment, and whether, under the facts, the plaintiff was entitled to a decree of rescission. On the question whether the report of the referee and the judgment thereon was sustained by the evidence: It is well settled by this court that, where the evidence is conflicting, if there is any evidence reasonably tending to support the verdict or judgment, such verdict and judgment will not be disturbed in this court. As to whether the report of a referee should receive the full force of this rule, we refer to section 5812, Comp. Laws of 1909, which reads:

" * * * The report of the referees upon the whole issue stands as the decision of the court, and judgment may be entered thereon in the same manner as if the action had been tried by the court. When the referee is to report the facts, the report has the effect of a special verdict."

In the case at bar, the referee was to report his findings of. fact. He reported same from the evidence taken before him. Having examined the evidence in the record, it is our opinion that the evidence not only tends to support the findings of the referee, but that such findings are amply supported by the evidence in the record. Besides, it happens in this case that the referee was a very learned lawyer and distinguished jurist, having for a number of years been an honored member of this court, and an examination of the record discloses that every issue involved had been given the most careful consideration.

On the legal proposition involved, it is contended by counsel for plaintiff in error that, where the alleged false representations are not relied upon by the party, he has not been deceived and could not enforce a rescission on the ground of fraud, for the

reason that he has not been deceived, citing a number of authorities in support of this contention. However, the referee in the case at bar found from the evidence, as a fact, the plaintiff had been deceived. Hence the authorities cited are not applicable herein.

It is also contended that a party seeking a rescission on the ground of fraud must institute his action within a reasonable time after the discovery of the fraud. This contention is not well taken here, for the reason that the findings of the referee from the facts and evidence before him show that from the very moment when plaintiff had an opportunity to see defendant's property he declined to go further with the contract; and tendered back his deed. It is also found by the referee, in effect, that his failure to institute proceedings sooner was caused by the fraudulent acts of defendant in secretly leaving Missouri, and leaving plaintiff there in a destitute condition and unable to prosecute an action.

It is also contended that plaintiff, having disposed of a considerable amount of defendant's personal property, and having spent the money received for same, and being unable to replace same, unable to place defendant *in statu quo,* was not entitled to a rescission, citing a number of authorities in support of this contention. We fully concur in the doctrine announced by the authorities cited. We fully concur in the maxims that "he who seeks equity must himself do equity;" that "he who comes into a court of equity must come with clean hands;" but this doctrine is not applicable where, by the fraud of the defendant, the water has been cut off, so that plaintiff could not come with clean hands.

In *Richards v. Farmers' & Merchants' Bank,* 7 Cal. App. 387, 94 Pac. 394, a case very much in point with the one at bar, the court says:

"Generally a party seeking rescission upon the ground of fraud must, as to the subject-matter or consideration of the contract, place the other party *in statu quo,* or offer so to do, before he would be entitled to relief; but he is not bound to restore what he has received, where, without his fault, there have been peculiar complications which made it impossible for him to offer full restoration, although the circumstances are such that a court

of chancery may by a final decree fully adjust the equities between the parties."

In the case at bar, the evidence clearly shows that plaintiff's inability to place defendant *in statu quo* as to the personal property was brought about by defendant's fraudulent acts, which fact was found from the evidence by the referee, and so reported.

It is also found as a conclusion of law by the referee that plaintiff's tender of deed and offer to do and perform whatever might be required of him by the court was sufficient tender, in law, under the circumstances, and in this conclusion of law we fully concur, as we do in the judgment of the court below confirming the report of the referee and decreeing a rescission of the contract.

The judgment therefore should be affirmed.

By the Court: It is so ordered.