## HARVEY v. THOMAS.

No. 19993. Opinion Filed May 19, 1931.

Rehearing Denied June 30, 1931.

F. E. Riddle, for plaintiff in error.

Mills & Cohen, for defendant in error.

RILEY, J. Plaintiff in error, defendant below, appeals from a judgment obtained by defendant in error, plaintiff below, upon a promissory note. The parties will be referred to as plaintiff and defendant, as in the trial court.

The note sued upon, dated May 27, 1924, was for $356.10, with interest at 8 per cent., together with attorney's fees if placed in the hands of an attorney for collection. The latter action was not to be taken under three

years from the date of the note. The petition is in the usual form and a copy of the note set out in full.

The defendant answered by general denial and pleaded fraud by plaintiff in obtaining the note from defendant. The allegations of fraud were, in substance, that plaintiff had induced defendant to enter her daughter in a private school conducted by plaintiff at San Antonio, Tex., for a three-year course, that in order to induce defendant to enter her daughter in said school plaintiff falsely and fraudulently represented to defendant that such school was of such standard and grade as would entitle the daughter to credit in any university in Texas or Oklahoma, or other school or university, to which defendant might desire to send her daughter subsequent to and upon completion of a course in plaintiff's school, and that if defendant did so enter her daughter in said school, after she had completed the course decided upon and had been regularly taught in said school, she would then be able to enter any college in Texas, Oklahoma, or elsewhere, and receive credits for the full course so completed, and that his school was "an accredited school" from which his students, upon completion of the regular course, were entitled to enter any university in Texas, Oklahoma, or elsewhere without question as to their qualifications; that, relying upon said representation, defendant did enter her daughter in said school and had not said representations, statements, and assurances been made, defendant would not have entered her daughter in said school; that her daughter completed the course agreed upon, and that immediately after the closing exercise in the school at the end of her daughter's third year, defendant, still believing the representations so made were true, executed the note sued upon: that thereafter and upon effort to enter her daughter in the University of Oklahoma, and investigation made in connection therewith, defendant ascertained for the first time that plaintiff's school was not of the character, standard, and grade as represented, and was not such a school as was entitled to credit for a course completed therein in the University of Texas or Oklahoma, and was "not what is usually termed an 'accredited school' with colleges and universities." She also alleged that on account thereof defendant would be compelled to lay out and expend much larger sums, with much loss of time, in entering her daughter in another school to complete her education as contemplated; that she had already paid plaintiff at least $250 more money than was due, owing to the inferior grade and standing of said school.

To the answer plaintiff filed no reply.

At the trial, the burden of proof having been assumed by the defendant, the court at the close of defendant's evidence sustained a demurrer thereto and directed the jury to return a verdict for plaintiff for the amount of the note and attorney's fees. From the judgment entered upon said verdict, after unsuccessful motion for a new trial, defendant appeals.

The petition in error contains six assignments. The first is error in overruling the motion for a new trial, which assignment is of necessity taken into consideration in connection with all others. The second assignment is that the court erred in sustaining the demurrer to defendant's evidence, and the third and fourth assignments are presented together in connection therewith.

We gather from the record and the briefs of both parties that the demurrer was sustained and a verdict directed for plaintiff on the theory that: First, there was no evidence offered by defendant that the representations made that plaintiff's school was an accredited one were in fact false; second, that if the execution of the note was induced by fraud, defendant upon discovery of the fraud had one of two remedies: (a) to affirm the contract and sue in damages, which defendant had not done, or (b) disaffirm or rescind the contract, which could only be done upon return of the consideration received, which condition was not shown to have been complied with by defendant.

The uncontradicted evidence of defendant was that the representations alleged in her answer were made. The truth of this evidence was admitted by the demurrer. Plaintiff asserts that there was no showing made as to the meaning of the word "accredited" among the schools and colleges of the country except as to the statement of one of the witnesses, Helen Heffner, defendant's daughter, whose schooling gave rise to the controversy, as to what she understood it to mean. But we think the word "accredited," as applied to preparatory schools and high schools of the country, where practically all of the students of universities and colleges acquire their elementary or preparatory training in education to qualify them for entrance into the universities and colleges, has a well-understood meaning. An "accredited" school is one of such standing that the grades or credits given therein upon the completion of the work in the subjects or branches taught are accepted by the colleges, etc., as a sufficient showing of educational qualifications if grades are satisfactory and sufficient

in such subjects for entrance in the college without further requirements and without entrance examinations. Every person of average intelligence knows that that is the principal if not the only reason for the maintenance of the high schools and other preparatory schools of the country to that standard where they are classed as "accredited schools."

Plaintiff contends that, although the evidence be sufficient to show that a school was not an "accredited school" at the time defendant attempted to enter her daughter in the University of Oklahoma, some 15 months after she had completed her course in his school, it does not necessarily follow that the school was not an "accredited" one at the time the representations were made.

We think, however, that the evidence of defendant, together with all the inferences which may reasonably be drawn therefrom, was such as would support a finding by the jury that plaintiff's school was not an "accredited school" as that term is generally understood. She showed that her daughter had been permitted to enter the University of Oklahoma. An investigation was made concerning the standing of plaintiff's school, and as a result thereof defendant's daughter was denied the right to continue as a student in the university. The reasons given were that the credits earned in plaintiff's school were not acceptable, for the reason that his school was not an accredited one. Defendant thereafter attempted to have her daughter enter a teachers' college at Springfield, Mo., and the University of Tulsa, upon her credits earned in plaintiff's school, but without success. This was more than 15 months after she had completed her course in plaintiff's school, but we think it was sufficient to raise a presumption that plaintiff's school was not an accredited school at the time she attended it, and it was for the plaintiff to rebut this presumption or show the contrary, if possible, or to show the change, if any, in the status of his school during the period between the time the representations were made and the rejection of her credits by the university and college mentioned.

The plaintiff earnestly contends that, although the fraud may have been sufficiently shown, defendant had the right to repudiate the note on the grounds of fraud only upon the return of the consideration received, and that not being able so to do, because the benefits received were of such nature that they could not be returned, the remedy of rescission was not available and that the only remedy was a suit at law for damages.

There can be no doubt that the general rule is that a person induced by fraud to enter into a contract has one of four remedies. He may, first, upon discovery of the fraud rescind the contract absolutely and sue to recover the consideration parted with, in which case he must restore or offer to restore whatever he has received of value on the contract; or, second, he may bring an action in equity to rescind the contract, and in such case it is sufficient for him to restore or offer in his petition to restore everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received thereunder, and sue to recover the damages sustained by reason of his reliance upon the fraudulent representations; or, fourth, he may in an action against him upon the contract, where he has not actually paid the consideration, set up the damages sustained by reason of the fraud as a defense or by way of counterclaim. Crouch & Son v. Huber, 87 Okla. 83, 209 Pac. 764; Morton v. Roberts, 88 Okla. 263, 213 Pac. 297; Byers v. Brisley, 81 Okla. 215, 198 Pac. 90; Jeter v. DeGraff, 93 Okla. 76, 219 Pac. 345.

The general rule which requires the return of everything of value received by virtue of or under the fraudulent contract, or offer of return thereof in order to rescind, has some well-established exceptions. The rule and the exception applicable here is stated in 13 C. J. 621-622, as follows:

"In order to rescind a contract for fraud, the party defrauded must, as a general rule, restore, or offer to restore, the consideration which he has received under the contract. The trend of the later cases seems to be toward a reasonable and equitable application of the rule, and to hold that it requires a plaintiff to do merely what equitably he ought to do.

"If the defrauded person, by reason of the wrongful conduct of the wrongdoer, is rendered incapable of fully restoring the latter to his former position, to that extent such restoration is not necessary to a rescission." . This exception was recognized and followed in Evans et ux. v. Brooks et ux., 34 Okla. 55, 124 Pac. 599 (an action in equity), where in the opinion it was said:

"It is also contended that plaintiff, having disposed of a considerable amount of defendant's personal property, and having spent the money received for same, and being unable to replace same, unable to place defendant in statu quo, was not entitled to a rescission, citing a number of authorities in support of this contention. We fully concur in the doctrine announced by the authorities cited. We fully concur in the maxims that 'he who seeks equity must himself do equity'; that 'he who comes into a court of equity

must come with clean hands'; but this doctrine is not applicable where, by the fraud of the defendant, the water has been cut off, so that plaintiff could not come with clean hands."

Many cases are cited in support of the text showing the exception to the general rule in 13 C. J., supra. An examination of these cases will disclose that many of them are based upon the case of Masson v. Bovet, 1 Denio (N. Y.) 69, where it was said:

"A person who is induced to part with his property on a fraudulent contract may, on discovering the fraud, avoid the contract and claim a return of what has been advanced upon it. Fraud destroys the contract ab initio, and the fraudulent purchaser has no title. * * *

"It was urged on the argument that a contract cannot be rescinded by one of the parties alone, so as to authorize a recovery by him of what had been paid upon it, unless the other party is thereby fully restored to the condition in which he stood before the contract was made. This is certainly the general rule; but in cases of fraud, such as this was, it can only mean that the party defrauded, if he would rescind the contract, must return or offer to return everything he received in execution of it. To retain the whole, or a part only of what was received upon the contract, is incompatible with its rescission; and hence the necessity of restoring what had been received upon it.

"This is not exacted on account of any feeling of partiality or regard for the fraudulent party. The law cares very little what his loss may be, and exacts nothing for his sake. If, therefore, he has so entangled himself in the meshes of his own knavish plot, that the party defrauded cannot unloose him, the fault is his own; and the law only requires the injured party to restore what he has received, and, as far as he can, undo what had been done in the execution of the contract. This is all that the party defrauded can do, and all that honesty and fair dealing requires of him. If these fail to extricate the wrongdoer from the position he has assumed in the execution of the contract. it is in no sense the fault of his intended victim, and upon the principles of eternal justice, whatever consequences may follow, they should rest on the head of the offender alone."

This case, we think, comes fairly within the exception to the general rule, since defendant, by the very nature of the transaction, could not restore the alleged benefits, and this because of the fact that plaintiff has so entangled himself by his fraudulent transaction as to make it impossible for defendant to restore.

The cases cited and relied upon by plaintiff, while stating the rule generally adhered to and followed in this state, are not applicable to the peculiar facts in the instant case.

If defendant's evidence is to be taken as true (and it must be so taken for the purpose of considering the correctness of the ruling), plaintiff engaged to give defendant's daughter a course in a school, for which the note given was in part payment, which school he represented to be an accredited school. He knew at the time he could not fulfill his promise. After defendant had for three years relied upon the promise and had at considerable expense kept her daughter in the school, and after the course had been completed, when the note was executed, plaintiff well knew that he had not complied with his agreements and given defendant that which she had contracted for. Yet, knowing all this, he took the note when he knew defendant could not return that which he had given her. He is now relying largely upon the unfortunate situation in which defendant finds herself as the result of plaintiff's perfidy, to deprive her of any defense to the note. In all justice and fairness he should not succeed.

In Planters Trading Co. v. Golden Gro. Co., 139 Okla. 246, 281 Pac. 771, it was held that both fraud in the procurement of a note and the absence of consideration are valid defenses in an action by the payee against the maker. In a transaction like the one here under consideration, we think the fraud in the procurement of the note is sufficient defense. The failure to get that which was contracted for is sufficient defense without being required to prove special damages. This renders it unnecessary to consider the question presented as to the refusal of the trial court to permit defendant to introduce certain evidence intended or offered for the purpose of showing damages.

For the error in sustaining the demurrer to defendant's evidence and directing a verdict for plaintiff, the judgment is reversed and the cause is remanded for a new trial.

LESTER, C. J., and HEFNER, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur.

CLARK, V. C. J., dissents.

SWINDALL, J., absent, not participating.