## HOOKER et al. v. WILSON.

No. 6729—Opinion Filed Jan. 8, 1918.

(169 Pac. 1097.)

### 1. Fraud — Admissibility of Evidence—Scope.

In determining the existence of fraud, any evidence, direct or circumstantial, which is competent by other rules of law, and which in the opinion of the court has a legitimate tendency to prove or disprove the allegations in the issue, is admissible. Great latitude is allowed in the introduction of evidence; the extent of the investigation being largely in the discretion of the trial court. The whole transaction involving the alleged fraud may be given in evidence.

### 2. Fraud—Sale of Property—Action for Damages.

A person induced by false and fraudulent representations to purchase or exchange his property may retain that which he has received and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations

### 3. Evidence—Prior Agreements—Merger in Written Contract.

Fraud and deceit always may be timely raised and vitiate any contract into which they are injected, and destroy the validity of everything into which they enter, and the party cannot hide behind a contract procured in the general scheme of his misconduct with the assertion that all representations whether false or otherwise made prev-

ious to a written conract are merged therein.

### 4. Appeal and Error—Harmless Error—Improper Argument—Objection.

The erroneous refusal of a trial court to sustain an objection to improper argument will not require a reversal of a case unless the same has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right.

(Syllabus by West, C.)

Error from District Court, Jackson County; Frank Mathews, Judge.

Action by George W. Wilson against Harley J. Hooker and Kenneth M. Wishart, partners, doing business under the firm name of Hooker & Wisehart. Judgment for plaintiff, and defendants bring error. Affirmed.

Everett Petry and Chas. H. Garnett, for plaintiffs in error.

C. A. Hatch, and Keaton, Wells & Johnston, for defendant in error.

Opinion by WEST, C. This cause was instituted by Geo. W. Wilson, defendant in error, against Harley J. Hooker and Kenneth M. Wishart, plaintiffs in error, in the district court of Jackson county, Okla., on the 20th day of September, 1913. The parties will be hereinafter referred to as they appeared in the trial court.

Plaintiff brought this suit against defendants to recover damages on account of the fraud and deceit which he alleged was practiced upon him in a certain transaction wherein defendants deeded plaintiff 215 acres of land in Jackson county, Okla., to be delivered on the 1st day of January, 1914, at which time 200 acres was to have been set to alfalfa with good stand thereon, and water rights secured from the Alfalfa Irrigation Company of Altus, Okla., permitting the first appropriation of water from Sandy creek running through section 5, in which section the 215 acres was located, alleging that defendants represented the supply sufficient to irrigate the farm set to alfalfa, and that defendants would erect, construct, and equip an irrigation plant for the purpose of impounding and distributing the water from said creek over said farm, said plant to consist of a good, substantial, concrete dam across the creek with pump and engine of approved make sufficient to distribute the water from said lake over said farm, and that they would build underground water pipes from said creek to the highest point on said farm, and would construct ditches and laterals in a good, workmanlike

manner to distribute the water over the entire 215 acres.

Plaintiff alleged that this had not been done on the part of the defendants, and could not be done for the reason that the water right could not be secured, and, if secured, the water supply would be insufficient to irrigate said land, and that defendants had no intention to comply with their contract, but to fulfill the same just so far and no further than was necessary to get possession of the consideration plaintiff had agreed to give for the land, all of which was denied, defendants answering further that they had fulfilled their contract, and that they were guilty of no fraud, and that, if guilty, that part of the fraudulent representations pleaded by plaintiff could not be raised for the reason that they were merged into the deed of conveyance. Upon these issues the case went to trial to a jury, and a verdict of $18,000 was rendered in favor of the plaintiff, to review which defendants bring this cause here.

While there are a number of assignments of error, they may be considered under the two following heads: (1) Could plaintiff under proper pleadings show the false and fraudulent representations made by defendants to him relative to the character and kind of soil, its suitableness for alfalfa, ability to procure and convey valid water rights to Sandy creek, to properly irrigate this 215 acres, and as to the sufficiency of water in said creek to properly irrigate said land made prior to the execution of an executory contract by plaintiff for the purchase of said lands? (2) As to whether or not the court submitted to the jury the proper measure of damages.

We have carefully read the record in the case, and there can be no doubt that it was the intent, object and purpose of plaintiff to purchase the 215 acres with 200 acres set to alfalfa and a good stand thereon, with an irrigation plant that would irrigate said land and the rights to appropriate the waters of Sandy creek, which plaintiff thought, and which had been represented to him as, amply sufficient to furnish water to irrigate this farm, and there is proof to sustain the contention of plaintiff that the defendants represented that they would sell plaintiff and turn over to him such a farm at the expiration of their lease on the same.

There can be little question that the purported assignment of the water rights by the Alfalfa Irrigation Company to plaintiff was of little or no value. In the first place,

they had no such rights, and, in the second place, could not convey them. It is true that plaintiff might be able, on account of the efforts made by the defendants to install an irrigation plant on Sandy creek and appropriate the same for the use of the 215 acres of land in question, to finally secure by appropriation a water right. As to whether or not this could be done would be a matter of conjecture depending upon whether or not plaintiff under the circumstances could comply with law so as to perfect the right attempted to be acquired, and whether or not there was another prior water right, and whether or not there was in fact sufficient water in said creek to irrigate this land, even if he should finally succeed in securing the right by appropriation.

Sections 993 and 994, Rev. Laws 1910, are as follows:

"993. Damages for Deceit.—One who willfully deceives another, with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers.

"994. Deceits Classed.—A deceit, within the meaning of the last section is either:

"First. The suggestion, as a fact, of that which is not true by one who does not believe it to be true.

"Second. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.

"Third. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact: or,

"Fourth. A promise, made without any intention of performing."

In 42 Okla. 330, 141 Pac. 272, Hankins v. Farmers' & Merchants' Bank, the second paragraph of the syllabus is as follows:

"Fraud—Evidence—Admissibility.—'In determining the existence of fraud any evidence, direct or circumstantial, which is competent by other rules of law, and which in the opinion of the court has a legitimate tendency to prove or disprove the allegations in this issue. is admissible. Great latitude is allowed in the introduction of evidence, the extent of the investigation being largely in the discretion of the trial court, and objections to circumstantial evidence an the ground of irrelevancy are not favored. Circumstantial evidence to show fraud may well be admissible when taken as a whole, although some of the circumstances, considered separately, would be incompetent. The whole transaction involving the alleged fraud may be given in evidence.' "

In Rumbaugh v. Rumbaugh, 39 Okla. 445, 135 Pac. 937, first paragraph of the syllabus is as follows:

"* * * If the fraud of itself be sufficient to induce, and did induce, the making of the deed, it is sufficient, when discovered, to warrant its cancellation."

The evidence tended to show that the land was not planted to alfalfa as agreed upon, and that the irrigation plant was not of the kind and character which they agreed to install, and that the water rights which they secured were of no value in the first place, and in the second place that the said creek did not furnish sufficient water to irrigate the land, even though they had properly installed the irrigation plant, and procured an unquestionable water right.

In Howe v. Martin, 23 Okla. 561, 102 Pac. 128, 138 Am. St. Rep. 840, the first and third paragraphs of the syllabus are as follows:

"(1) A party is guilty of fraud and deceit where, with intent to induce another to enter into a contract, he makes a positive assertion, which is material, in a manner not warranted by his information, or where he is not shown to have reasonable grounds for believing it true, where the assertion so made is not true, even though believed by the party making it. In such a case the definite assertion as a fact of that which is untrue, concerning that which the party has no knowledge, is tantamount in its effects to the assertion of something which the party knows to be untrue."

"(3) A person induced by false and fraudulent representations to purchase or exchange for property has three remedies. He may: First, upon discovery of the fraud, rescind the contract absolutely, and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such a case he must restore, or offer to restore, to the parties sued whatever he has received by virtue of the contract; or, second, he may bring an action in equity to rescind the contract, and in such a case it is sufficient for plaintiff to restore, or to make offer in his petition to restore, everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received, and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations."

In Groves v. Stouder, 58 Okla. 744, 161 Pac. 239, the third and fourth paragraphs of the syllabus are as follows:

"(3) One who contracts to convey a certain character of title to real estate should be prepared and able to convey to the

grantee an estate or interest therein substantially corresponding with that bargained for and agreed to be sold.

"(4) G. contracted to convey to S. certain lands in fee simple and to deliver preference leases on certain school lands. He executed warranty deed to the lands to be conveyed in fee simple, but failed to deliver preference leases on a portion of the school lands. Held, that S. was not required to take a title different from that agreed to be delivered, and was entitled to rescind the contract."

In Werline v. Aldred, 57 Okla. 391, 157 Pac. 305, the second and fourth paragraphs of the syllabus are as follows:

"(2) One induced by fraudulent and false representations to exchange property may affirm the contract, retain that which he has received, and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations."

"(4) One who relies upon a material representation which is false is not precluded from recovering damages by reason of the fact that he had the opportunity to investigate for himself and did not do so."

It was contended by the plaintiff that the entire transaction from the opening up of the negotiations down to the time when the suit was filed was tainted with fraud and deceit, that it was the purpose and intent of the defendants to mislead and deceive the plaintiff with reference to this land, in question; that they knew in the first instance that their purported conveyance of the water rights was worthless and of no effect, and that a water supply sufficient to irrigate the land was not furnished by said creek, and it was their intent and purpose not to carry out their part of the contract, but to abandon the same as soon as they could, carry the contract to a sufficient completion to get possession of the consideration which plaintiff had agreed to give for the land. These issues were plainly presented by the pleadings, and were fairly supported by the evidence, and properly submitted to the jury, and the jury by their verdict found the allegations of plaintiff were true.

Fraud and deceit always may be timely raised and vitiate every contract into which they are injected, and destroy the validity of everything into which they enter, and the party guilty cannot hide behind a contract procured in the general scheme of his misconduct with the assertion that all representations, whether false or otherwise, made previous to a written contract, are merged therein. If so, one guilty of fraud

might relieve himself of that act by means of his artifice in obtaining another contract, or by reducing certain parts of a fraudulent contract to writing, and thus escape the penalty of his misconduct. A party, upon the discovery that fraud and deceit has been practiced upon him and that he has suffered damage by reason thereof, may go into court and raise this issue, and in support thereof offer all direct and circumstantial evidence from the inception of such fraudulent designs, whether made anterior or subsequent to the execution of a written contract secured from him in furtherance of fraudulent designs, so long as he does not, with knowledge of the fraud practiced upon him, ratify and affirm such contract. We do not think there was any error committed by the trial court in allowing to go to the, consideration of the jury this entire transaction from its inception up to the date of the trial.

With reference to the second proposition involved as to the measure of damages, the court uses the following language:

"And you are charged that, should you find the terms and conditions of the contract, which you find to have been breached, should you find that there has been a breach of the same, or any part thereof, can by reasonable effort and proper expenditures and within a reasonable time be fulfilled and carried to completion, then you will find the measure of plaintiffs' damages to be the reasonable cost that it would take to carry out and complete the same; but should you find that by a reasonable and proper effort and proper expenditures within a reasonable time that the terms and conditions of said contract as to the matters submitted to you in these instructions or to some material part thereof cannot be fulfilled and carried to a completion as called for in said contract, then you are informed that the measure of the damages would be the difference in the fair market value on January 1, 1914, of the land conveyed to plaintiff by defendants mentioned in the contract, and what would have been its fair market value at said time provided defendants had complied with their contract as to the matters herein submitted to you, provided you find that they did not comply with said contract."

We think that this was a proper submission of the measure of damages in the instant case.

Section 2858, Rev. Laws 1910, is as follows:

"2856. Breach of Covenants in Grants.— The detriment caused by the breach of a covenant of seisin, of right to convey, of warranty, or of quiet enjoyment, in a grant

of an estate in real property, is deemed to be:

"First. The price paid to the grantor, or, if the breach is partial only, such proportion of the price as the value of the property affected by the breach bore, at the time of the grant, to the value of the whole property.

"Second. Interest thereon for the time during which the grantee derived no benefit from the property, not exceeding six years; and,

"Third. Any expenses properly incurred by the covenantee in defending his possession."

It was contended by the plaintiff that the contract on the part of the defendants was impossible of performance: (1) For the reason that the water rights which defendants attempted to sell were worthless and of no value, and no rights were conveyed thereunder; and (2) that the waters furnished by Sandy creek are insufficient to irrigate said land, even if all other conditions of the contract could have been complied with. There was evidence tending to support this contention, and the jury evidently took this view of the case. Plaintiff had parted with $43,000 in lands, notes, mortgages, and rentals. The jury evidently charged plaintiff with the price agreed to be paid for the land which was set to alfalfa, the cost of the irrigation plant, and the balance of the land at $50 per acre, the price which the evidence tended to show it to be worth as a dry-farming proposition, and give him damage for the difference between this amount and the amount that he paid for the land, and we think that the evidence fairly supports the verdict of the jury, and that the judge of the court properly submitted the measure of damages.

Plaintiffs in error further complain of the action of the trial court in failing and refusing to admonish counsel for the plaintiff because of certain alleged remarks to the jury in his opening argument, wherein it is alleged that he made use of the following language:

"Gentlemen of the jury, the gist of the plaintiff's action is for the false and fraudulent representations of the defendants in getting this old man to make this contract. You have all read with indignation of some real estate men pulling off fraudulent deals, and now you have one before you, and it is up to you to wreak your vengeance."

This assignment is brought up in the nature of a bill of exceptions which was allowed by the trial court, and attached to the case-made. Counsel for defendants

deny using the language complained of, and the record proper of the trial does not disclose any report of this argument or objections thereto. Defendants have failed to cite any authority in support of their contention. In view of the holding in case of Producers' Oil Co. v. Eaton, 44 Okla. 55, 143 Pac. 9, wherein it is stated:

"The erroneous refusal of a trial court to sustain an objection to improper argument will not require a reversal of a case unless the same has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statuory right"

—we deem that upon the showing made this court will not be warranted in reversing said cause on account of this assignment. The whole record being considered, it is not apparent that the record complained of resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right.

Finding no error, the cause is affirmed.

By the Court: It is so ordered.