### BYERS v. BRISLEY et al.

No. 9845—Opinion Filed April 26, 1921.

(Syllabus.)

**1. Vendor and Purchaser—Fraudulent Representations—Remedies of Purchaser.**

A person induced by false and fraudulent representations to purchase or exchange for property has four remedies. He may, first, upon discovery of the fraud, rescind the contract absolutely and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such case he must restore, or offer to restore, to the parties sued whatever he has received by virtue of the contract; or, second, he may bring an action in equity to rescind the contract, and in such a case it is sufficient for him to restore, or make offer in his petition to restore, everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received, and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations; or, fourth, he may, in an action against him to recover the purchase price or to enforce a security given therefor, set up the damages sustained by reason of the fraud, as a defense or by way of counterclaim.

**2. Fraud — Elements — False Representations.**

A party is guilty of fraud and deceit where he makes any false representation of a material fact, with knowledge of its falsity and with intent that it shall be acted upon by another in entering into a contract, or where he makes a positive assertion which is material, in a manner not warranted by his information, or where he is not shown to have reasonable grounds for believing it true, where the assertion so made is not true, even though by him believed to be 'true, and the definite assertion as a fact of .that which is untrue, concerning that of which the party has no knowledge, is tantamount in its effect to the assertion of something which the party knows to be untrue.

**3. Appeal and Error—Questions of Fact—Verdict.**

In a trial by jury, where the evidence is conflicting, and there is competent evidence reasonably tending to support the contention of the prevailing party, the verdict will not be disturbed by this court.

Error from District Court, Tillman County; Frank Mathews, Judge.

Action by J. D. Byers against E. L. Brisley and W. E. Brisley for balance due on land note. Judgment for defendants, on counterclaim, and plaintiff brings error. Affirmed.

John E. Williams and George A. Ahern, for plaintiff in error.

Mounts & Davis, Wilson & Roe, B. L. Tisinger, and S. K. Bernstein, for defendants in error.

NICHOLSON, J. In December, 1909, the defendant in error E. L. Brisley, while at Green River, Utah, inspected a tract of land consisting of 39.44 acres owned by J. D. Byers, the plaintiff in error; said land being shown to the defendant by the agent of said plaintiff, at which time said land was priced to said defendant at the sum of $15,776. A contract for the sale of said land was executed by the plaintiff at Green River, Utah, on January 5, 1910, and was by the defendant brought to his home at Frederick, Oklahoma, and there executed by him on February 5, 1910. In said contract it was provided that the purchase price should be paid as follows: The sum of $1,000 cash, the receipt of which was acknowledged; the sum of $2,000 on April 1, 1910; the sum of $4,776 on July 1, 1910; and the balance of $8,000 to be paid within two years from the date of the contract; the last named sum to draw interest at the rate of 8 per cent. per annum from date, and to be secured by a mortgage upon said tract of land. It was further agreed in said contract that if for any reason the peach trees growing upon said land, being three years or more old, should not bear a reasonable crop of fruit for the season of 1910, then the price should be reduced $25 per acre on the whole tract, or the sum of $986, which should be taken from the payment due July 1, 1910.

The defendant and his family moved from Oklahoma to Green River, Utah, in March, 1910, and on April 2, 1910, it having been determined that the peach crop for the year 1910 would be a failure, the sum of $986 was deducted from the purchase price and the defendant paid the plaintiff the entire amount of said purchase price, except the sum of $8,000; the plaintiff executed and delivered to the defendant a deed to said land,

and the defendants in error, E. L. Brisley and W. E. Brisley, husband and wife, executed and delivered to the plaintiff their note for the sum of $8,000, dated January 5, 1910, and maturing three years from date, together with a mortgage securing the payment of said note and covering said land. The defendants took possession of said land and continued in possession thereof until September, 1912, when they conveyed it to Lenora Phillips in exchange for land in Cotton county, Oklahoma; Lenora Phillips assuming the payment of said note for $8,000 as a part of the consideration.

In 1914, Lenora Phillips defaulted in the payment of the amount due and the plaintiff brought suit to foreclose said mortgage, obtained judgment, and the land was sold for the sum of $5,000, which sum was credited on the note, and on July 10, 1916, the plaintiff filed this action in the district court of Tillman county praying judgment against the defendants for the sum of $5,903.71, the balance remaining due on said note, with interest thereon at the rate of 8 per cent. per annum from June 8, 1916.

The defendants answered, admitting the execution of the note and mortgage, and pleading, first, that said note was given in part payment for the land in plaintiff's petition described, and that at the time of the execution of said note the plaintiff and said defendants entered into a written contract by the terms of which it was agreed that in consideration of said defendants having paid and agreed to pay the sum of $7,776 in cash upon the purchase price of said land, which money was afterwards paid to said plaintiff, in case said defendants could not or were not able to pay said note when the same became due, said note was to be void and of no effect, and both parties released from any obligation whatsoever under said note, and in the event that said note could not be paid, the money already paid to said plaintiff should be accepted in full satisfaction of any liability to said plaintiff, and that said defendants were not to be liable in any way upon said note, and attached a copy of the contract referred to as "Exhibit A". (This contract is the contract of sale of date January 5, 1910.)

As a further defense the defendants pleaded that the plaintiff made certain false and fraudulent representations as to the character, quality, and value of said land; that when said defendant E. L. Brisley went to see said land it was covered with about 12 inches of snow; that because thereof he could not inspect said land and was compelled to and did rely upon the statements and representations of the plaintiff in regard to said land, its value, condition, and quality; that at said time said land had standing upon it a large number of fruit trees, and that the plaintiff represented to said defendants that all of said fruit trees were living, and that every foot of said land was very fine black, sandy valley land, very rich and fertile, and would produce a large amount of crops of all kinds; that if said defendants would buy said land, they could raise enough cantaloupes and other garden products and other crops between the rows of said fruit trees to pay them a large profit, and that said fruit trees would bear sufficient to yield them a large profit; that plaintiff represented that there was about ten acres of alfalfa growing on said land, which would produce seven or eight tons per acre each cutting, and that defendants could obtain four or five cuttings each year, and that said tract of land was a very valuable piece of property; that said plaintiff had been offered at one time the sum of $16,000 therefor, but that said land was worth a great deal more than that amount, and that in order to induce the defendants to locate on said land he would sell the same to them for less than it was worth, to wit, the sum of $15,776, and if said defendants would buy said land, the plaintiff would guarantee that the same, with good management, would increase in value within 18 months more than sufficient to double the money the defendants would have to pay upon said land; that said land had produced large crops of fruit, alfalfa, garden products, and other crops, and had always produced large crops for more than ten years; that relying upon said statements and representations, and believing the same to be true, said defendants purchased said land for said sum of $15,776 and paid the plaintiff the sum of $7,776 in cash, and executed to said plaintiff the note sued on for the balance of said purchase price.

It is further averred in said answer that, after having paid said sum of money, and after taking possession of said land, the defendants discovered that most of the fruit trees upon said land had been killed by the cold weather during December, 1909, and prior thereto, and after making said discovery they expended the sum of $500 in removing the dead fruit trees from said premises; that they also discovered that the quality of said land was not as represented; that a large portion of said land was not black, rich, sandy valley land, but was known as "rawhide" or "hardpan" land, and that it would not produce crops of any kind, and in fact no vegetation would grow thereon; that after they took possession of said land they discovered that said land had never pro-

duced paying crops of any kind; that the alfalfa upon said land would only produce two. cuttings per year of about one ton per acre, and that the balance of said land would not produce paying crops of any kind; that said plaintiff had never been offered the sum of $16,000 for said land, and that said land was not worth more than $4,000. It was further averred that the representations so made by the plaintiff to said defendants to induce them to purchase said property were absolutely false and that the plaintiff knew them to be false and that the plaintiff made the same in order to induce said defendants to purchase said property; that said defendants were induced by false and fraudulent representations to purchase said property, and had not said false and fraudulent representations been made to them they would not have purchased said property, and by way of counterclaim the defendants prayed judgment against said plaintiff for the sum of $7,776, and the further sum of $500, money expended by them in removing dead fruit trees from said premises.

To the answer the plaintiff filed a demurrer, which was by the court overruled, and he then replied, pleading a general denial and also an estoppel. On September 19, 1917, the cause was tried to a jury and a verdict in favor of the defendants and against the plaintiff for the sum of $2,500 was returned, upon which judgment was entered, and to reverse which this proceeding in error is brought.

Plaintiff in error contends that because the defendants have not reconveyed or offered to reconvey to the plaintiff said land, but have parted with the title thereto, they have waived the fraud, if any, and are estopped to resist the action on account of any fraudulent representations made by the plaintiff inducing them to purchase the land. If this were an action for the rescission of the contract, there would be merit in his contention, and the authorities cited would be in point; but the defendants do not seek a rescission; on the contrary, their answer shows that they affirmed the contract and seek by way of counterclaim to recover damages because of the alleged fraud of the plaintiff, and this they had a right to do.

In Howe et al. v. Martin et al., 23 Okla. 561, 102 Pac. 128, this court held:

"A person induced by false and fraudulent representations to purchase or exchange for property has three remedies. He may, first, upon discovery of the fraud, rescind the contract absolutely, and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such a case he may restore, or offer to restore, to the parties sued whatever he has received by virtue of the contract; or, second, he may bring an action in equity to rescind the contract, and in such a case it is sufficient for plaintiff to restore, or make offer in his petition to restore, everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received, and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations."

This case has been followed in Burke v. Smith, 57 Okla. 196, 157 Pac. 51; Werline v. Aldred, 57 Okla. 391, 157 Pac. 305, and Hooker v. Wilson, 69 Oklahoma, 169 Pac. 1097. And it is well settled that the vendee of land in an action against him to recover the purchase price thereof, or to enforce a security given therefor, may recover damages by way of counterclaim or recoupment for false and fraudulent representations by the vendor as to the location, boundaries, quality, quantity, and natural advantages of the land. Brown v. Freeman, 79 Ala. 406; Eagan Co. v. Johnson, 82 Ala. 233; Mears v. Nichols, 41 Ill. 207, 89 Am. Dec. 381; White v. Sutherland, 64 Ill. 181; Myers v. Estell, 47 Miss. 4; Van Epps v. Harrison, 5 Hill (N. Y.) 63, 40 Am. Dec. 314; Goodwin v. Robinson, 30 Ark. 536; 13 C. J. 395. See, also, Withers v. Greene, 9 How. (U. S.) 213.

Plaintiff next contends that the misrepresentations alleged to have been made by the plaintiff as an inducement for the defendants to purchase the land were mere "trade talk," "matters of opinion," "representations as to value, etc.," and did not constitute actionable fraud or a defense to plaintiff's cause of action, and that the defendants had no right to rely upon said statements, but were bound to use their own judgment. It is in some instances difficult to distinguish between mere trade talk and matters of opinion, and statements of material facts, and each case must rest upon the particular facts and circumstances surrounding the transaction in question. In the third paragraph of their answer the defendants aver that at the time they went with plaintiff to see the land the same was covered with about 12 inches of snow, and that because thereof they were unable to inspect said land and were compelled to, and did, rely upon the representations and statements of the plaintiff in regard to said property, its value, condition, and quality in making said purchase; that at said time said land had standing upon it a large number of fruit trees, and that the plaintiff represented to them that all of said fruit trees were living, and that every foot of said land was very fine black, sandy valley land, and that every foot of said land was very rich and fertile, and would produce large crops of all

kinds; that there was about ten acres of alfalfa growing upon said land, which would produce seven or eight tons of alfalfa per acre at each cutting, and that defendants could obtain four or five cuttings of alfalfa each year; that said land was very valuable, and he had refused the sum of $16,000 therefor, but that the same was worth a great deal more than that sum; that if defendants would buy said land, he would guarantee that the same would increase in value within 18 months more than sufficient to double the money the defendants would have to pay for it, and that said land had produced large crops for more than ten years. While the statement of the amount of crops the land would produce in the future might be the expression of an opinion, yet the statement of what it had produced in the past was a statement of a material fact, as was also the statement as to the quality of the soil, the condition of the trees, and the sum he had previously been offered for said land.

In Prescott et al. v. Brown, 30 Okla. 428, 120 Pac. 991, the third and fourth paragraphs of the syllabus are as follows:

"3. In an action to foreclose a real estate mortgage secured by fraud and deceit, by the positive fraudulent misrepresentations made by the vendor with intent to deceive, the doctrine of caveat emptor, which is not founded on a high standard of morals, will not avail as a shield and protection to the deliberate frauds and cheats of sharpers, and such doctrine shall not be extended further than it has been carried by previous decisions, even with respect to 'dealers' talk,' 'matters of opinion,' 'representations as to values,' etc.

"4. A vendee has a right to act on the positive representations of existent material facts made by the vendor, even though the means of knowledge were open to him. The real question in such matters is, Was the party in fact deceived by the false representations? It is as much an actionable fraud willfully to deceive a credulous person with an improbable story as it is to deceive a cautious and sagacious person with a plausible one.' "

And in Chisum v. Huggins, 55 Okla. 423, 154 Pac. 1146, it is held that the statement by a vendor that he had been offered a certain sum for the property, on sale, or that a third party had been offered a certain sum for the same kind of property in the same location, is a statement of a material fact affecting the value, and, if false, may form the basis of an action for deceit. It follows that the trial court did not err in overruling the demurrer to the third paragraph of the answer.

We have examined the evidence adduced at the trial, and, while it is conflicting, there is sufficient competent evidence on behalf of the defendants reasonably tending to support their contention, and the cause having been submitted to the jury under proper instructions, their verdict will not be disturbed by this court. Harrell et al. v. Scott, 51 Okla. 373, 151 Pac. 1169; Incorporated Town of Sallisaw v. Chappelle, 67 Oklahoma, 171 Pac. 22; Midland Valley R. Co. v. Rippe, 61 Okla. 314, 161 Pac. 233; Dickinson v. Perry, 75 Okla. 25, 181 Pac. 504. The court did not err in overruling the demurrer of the plaintiff to the evidence of the defendants.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

HARRISON, C. J., and PITCHFORD, McNEILL, and ELTING, JJ., concur.