## HOLCOMB & HOKE MFG. CO. v. JONES.

No. 11961—Opinion Filed Sept. 9, 1924.

(Syllabus.)

**1. Contracts—Fraud—Remedies.**

A party who, by fraud, has been induced to enter into a contract has, upon discovery thereof, a choice of two classes of remedy, to wit, rescission or affirmance.

**2. Same—Rescission—Restoration of Consideration.**

A party attempting to rescind a contract must comply with the statutes by offering to restore, or by restoring, everything which is of value to him or the adverse party, which he has received under the contract. His failure to do so is fatal to his cause of action.

**3. Sales—Fraud of Seller—Remedies of Buyer.**

A purchaser of chattels who has been induced to enter into contract by the fraud of his seller is not confined to the remedy of rescission. He may affirm the contract and sue for damages, but he cannot both affirm and disaffirm.

**4. Same—Damages to Buyer—Measure.**

It is a settled rule in this jurisdiction that the measure of damages to a purchaser for fraud of his seller in inducing him to enter into a contract is the difference between the actual value of the property sold and the value it would have had if the representations were true.

**5. Contracts — Fraudulent Representations not Part of Contract.**

A defrauded party cannot treat an alleged fraudulent representation as terms of a contract. Such representations constitute only grounds for avoiding liability under the contract and cannot be a covenant of the instrument itself.

**6. Same—Effect of Affirmance of Contract by Defrauded Party—Right to Damages.**

Any act of a defrauded party which recognizes the binding force of a contract, the execution of which was induced by fraud of the other party, constitutes an affirmance of the contract and waives the right of rescission on account of fraud, but does not necessarily waive the right to recover damages for fraud.

**7. Same.**

The rule that affirmance of a contract, with knowledge of fraud, does not bar an action for damages, is subject to the limitation that the defrauded party, after discovering the fraud, must stand toward the other party at arm's length and must not make any new agreements or engagements respecting it. If he does so, he condones and waives the fraud.

**8. Same—Waiver of Fraud—Question for Jury or Court.**

When a party, by fraud, has been induced to enter into a contract and said contract remains wholly executory when such defrauded party discovers the fraud, a part performance of same thereafter by the defrauded party waives and condones the fraud, and this the court will determine upon admitted facts as a matter of law. But when such contract has already been partly or wholly executed by the defrauded party before his discovery of the fraud, it is a question of fact to be determined by the jury, under proper instructions, whether the acts of the defrauded party thereafter done amount to a waiver or condonation of the fraud. However, where the acts of the defrauded party after the discovery of the fraud in relation to a contract already partly executed are such that the minds of all reasonable men must agree as to his intentions, the determination of that question may be made by the court.

Error from District Court, Osage County: Preston A. Shinn, Judge.

Action by the Holcomb & Hoke Manufacturing Company, of Indianapolis, Ind., against Clyde Jones. Judgment for defendant, and plaintiff brings error. Reversed and remanded for new trial.

M. L. Holcombe and G. K. Sutherland, for plaintiff in error.

P. Cleveland Gardner and McDonald & Spence, for defendant in error.

LYDICK, J. Plaintiff in error, as plaintiff, commenced this action against the defendant in error, as defendant, in the district court of Osage county upon a certain promissory note dated July 26, 1917, in the sum of $535, with interest at the rate of six per cent. per annum from date, the principal being due in bi-weekly installments of $20.50. The parties will be referred to as they appeared in the trial court. The case went to trial upon the issues joined by plaintiff's petition, the defendant's amended answer and cross-petition, and plaintiff's reply, consisting of a general denial. Briefly, defendant contends that by fraud and deceit on the part of the plaintiff's agent he was induced to enter into a contract on or about April 5, 1917, for the purchase of a certain pop corn machine; that the note sued on was a part of that written contract, and he now seeks relief from these alleged fraudulent acts; but neither the amended answer nor the cross-petition discloses any consistent theory on the part of the defendant. He does not assert that he elects to rescind the sale, nor does he offer to make restoration of the machine, yet he asks for the return of that portion of the purchase price paid by him on the machine. He does not express an intention to abide the terms of the contract and recover damages, although he retains the machine and asks a money judgment.

According to the defendant's pleading and testimony, the plaintiff's agent represented that he would sell no similar machine in the town of Hominy, but notwithstanding that representation the plaintiff did make another sale on the same day—whether before or after the contract with the defendant is not shown by the evidence. The evidence merely establishes a broken promise on the part of the plaintiff's agent, without proof of bad faith on the part of the agent or his principal at the time the promise was made. This is not such fraud as will vitiate the contract. As the case may be tried again, we should pass upon the other questions of law certain to arise in a new trial.

The defendant says that the town of Hominy was too small to support two pop corn machines. At the trial he attempted to prove loss of the profits which he would have received from the operation of the machine without competition; but he had not alleged loss of profits as an element of damage in his cross-bill. The court, permitting the defendant to retain the machine, instructed the jury that in event it found in favor of defendant, it should assess his recovery of damages in the amount paid by the defendant on the purchase price of the machine and the freight paid by him for the shipment, which aggregated, according to defendant's testimony, $212. The jury so did, and the court rendered judgment accordingly. The various inconsistencies appearing in the pleadings, evidence, and the court's instructions undoubtedly resulted from the appar-

ent conflict in the decisions of courts of last resort defining the rights, remedies, and damages available to a party who claims to have been induced by fraud to execute a contract. Some of the propositions discussed herein were presented by counsel for either side, and had the case been tried upon a consistent theory and were there less conflict in the authorities, perhaps some of these propositions would not have been involved. It is only by a process of elimination that we reach a final conclusion on the rights of the parties. Moreover, the importance of establishing some practical and definite rules by which litigants, the bar, and the courts may be governed in similar cases demands an independent study of the subject. Since defendant's pleadings and evidence contain some of the elements of every remedy allowed him and at the same time omit a material portion of each, we feel constrained to discuss at length the defects under each theory.

The plaintiff objected to the introduction of any evidence under the amended answer and cross-petition, demurred to the evidence of the defendant, moved the court for a directed verdict, filed a motion for judgment notwithstanding the verdict, and filed a motion for new trial, all of which were overruled and exceptions duly taken. The plaintiff brings the case here on appeal. The overruling of these motions are among the assignments of error.

This court has heretofore sufficiently adjudged that one who has been defrauded has, upon discovery thereof, a choice of two classes of remedies, to wit, rescission or affirmance. See Howe v. Martin. 23 Okla. 561, 102 Pac. 128; Wesley v. Diamond, 26 Okla. 170, 109 Pac. 524; Werline v. Aldred, 57 Okla. 391, 157 Pac. 305; Crouch & Son v. Huber, 87 Okla. 83, 204 Pac. 764; Byers v. Brinsley, 81 Okla. 215, 198 Pac. 90; Buck v. Smith, 57 Okla. 196, 157 Pac. 51.

Section 5097, Comp. Stat. 1921, defines the duties incumbent upon a party attempting to rescind a contract as follows:

"Rescission, when not affected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules: First, he must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and, second, he must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same. upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

This language is clear and definite. In view of this statute, we have in a number of cases held that a failure to plead restoration or offer restoration is a fatal defect in the complaint of the party attempting to rescind. The statute controls whether an action in rescission be legal or equitable. See Herron v. Harbour, 57 Okla. 71, 155 Pac. 506; Carson v. Walker, 57 Okla. 182, 156 Pac. 1172.

The only instances in which we excuse failure to restore arise when the sufficiency of the petition was not attacked and the evidence on the trial supplied the defect in the pleadings; or when, according to the pleading or evidence, it is shown that whatever was received had no value and restoration would, therefore, effect no change in the status of the parties. Rea v. Lewis, 41 Okla. 708, 139 Pac. 977.

Neither in the pleadings nor the evidence herein do we find an offer of restoration from the defendant. On the contrary, he retained the machine. He pleaded that the machine was worthless to him, but did not plead that it was worthless to the plaintiff. According to his testimony adduced at the trial, it was worth to him at Hominy, even with the other machine in operation, approximately 50 per cent. of the purchase price. He nowhere charges that the machine itself is defective, but determines its valuation on the ground that the town of Hominy had not sufficient population to make the operation thereof profitable, the natural inference from the defendant's own testimony being that the mechanical apparatus itself is worth its full purchase price, and if placed in operation elsewhere, would realize for its owner an amount equal to his expectation. The judgment of the court not only permitted the defendant to retain this machine, but in addition thereto allowed him damages equivalent to the freight and payments on the purchase price. This gave him the machine free of cost or expense.

On rescission of a contract, the contract is awarded ab initio and the rights of the parties in reference to the subject-matter of it are the same as if no contract had ever been made. Rescission places the parties in the position they would have occupied if the contract had never existed. Nash v. Minn. Title Ins. Co., 163 Mass. 574. 28 L. R. A. 753; Snow v. Alley, 144 Mass. 546, 59 A. R. 119; Roome v. Hennings. 21 N. Y. Supp. 938.    When a defrauded party annuls a fraudulent contract and reclaims what he lost thereby, he obtains complete reparation. but he cannot both retain what he received and recover what he paid out. The reason

is obvious. The contract, being tainted with fraud, is voidable at his option, and if he sees fit to avoid it, he can no longer enforce any part thereof and no action can be based on the contract itself. Westerfield et al. v. N. Y. Life Ins. Co. (Cal.) 61 Pac. 667. If he wishes to recover that with which he parted, he must promptly offer to restore what of value he received. The requirements of the Code cannot be ignored. If the article received is of no use or value to the party defrauded but is to the seller, still it has a value and must be restored.

· We, therefore, hold that if defendant sought to rescind the contract, he wholly failed to state or prove a defense to the plaintiff's petition or state or prove a cause of action on his own cross-bill, because he failed to allege or offer restoration. Under the theory of rescission, the trial court should have sustained the motion of plaintiff for a directed verdict.

In some cases rescission will not fully compensate the loss of a party who has, by fraud, been induced to enter into a contract. In all cases he may, if he so desires, retain what he received under the fraudulent contract and seek redress in an action which he may institute, or by counterclaim in an action which the other party may institute against him on the contract, for the damages sustained by him by reason of fraud in its conception, but such an action involves an affirmance of the contract. He cannot both affirm and disaffirm. He cannot repudiate the contract and demand restitution of what he has paid, and at the same time treat the contract as subsisting and recover the damages he has suffered by reason of the fraud.

In paragraph 353 vol. 1, Page on Contracts, the author says:

"A partial rescission of an entire contract cannot be had. The contract must be invalid or void in toto. This rule applies to informal rescission at law or repudiation of liability under the contract. * * * The rule that partial rescission or repudiation is impossible applies equally to actions in equity."

See, also, Wesley v. Diamond. 26 Okla. 170, 109 Pac. 524; Crouch & Son v. Huber, 87 Okla. 83, 209 Pac. 764.

In the case of Roger v. Henry, 48 Okla. 759, 150 Pac. 722; Werline v. Aldred. 57 Okla. 391, 157 Pac. 305; Jeter v. DeGraff, 93 Okla. 76, 219 Pac. 345; and others, we have upheld the right of a defrauded party to affirm the contract and seek damages. Since the defendant has wholly failed to comply with the statutes relating to re-scission, we will consider the case on the theory of an action in affirmance.

However, in event of affirmance of the contract, he should not have asked in his prayer for the return of the purchase money paid by him, nor should the court have given instruction No. 6, directing the jury to assess defendant's damages in the amount of freight and purchase money paid. While the purpose of rescission is to place the parties in statu quo, the remedy of affirmance is granted on the theory that a purchaser who acts honestly on his own part is entitled to the full fruit of his bargain and cannot without his consent be deprived thereof by the fraud of the seller. To accomplish this end, we follow the weight of authority in awarding to the purchaser as damages the difference between the actual value of the property and the value it would have had were the representations true. Howe v. Martin, 23 Okla. 651, 102 Pac. 128; Wilson v. New U. S. Cattle Co., 20 C. C. A. 241, 73 Fed. 994; Roger v. Henry, 48 Okla. 759, 150 Pac. 722; Werline v. Aldred, 57 Okla. 391, 157 Pac. 305; Vail v. Reynolds, 118 N. Y. 297, 23 N. E. 301; Williams v. McFadden, 23 Fla. 143, 24 R. C. L. 345; Page on Contracts. vol. 1, par. 340. It is only because the foregoing rule has been heretofore repeatedly announced by this court that the writer of this opinion re-announces it here. There is much to be said in support of the minority rule as to measure of damages announced by the Supreme Court of the United States in the case of Smith v. Bollees, 33 L. Ed. 379, and ably defended in a dissenting opinion by Mr. Justice Hamersley of the Supreme Court of Connecticut in Gustofoson et ux. v. Rustemyer, 39 Atl. 104. The reasoning is highly persuasive to the writer, but we regard the question as settled by former decisions of this court in this jurisdiction.

Even though upon a new trial there should be proven representations constituting actionable fraud, there must be made proof of damages consistent with the foregoing rule. We find in the record before us only the defendant's explanation that he could not operate the machine with profit because the town of Hominy had not sufficient population to patronize two pop corn stands; that he attempted to run the machine several weeks and then placed it in storage. The possible profits which the defendant might have made from the operation of this machine cannot be considered as the basis of defendant's loss on account of fraud in the inducement of the contract. The case of Bokoshe Smokeless Coal Co. v. Bray, 55 Okla. 446, 155 Pac. 226, established

the rule that ordinarily "anticipated profits of a commercial or other like business are too remote, speculative, and dependent upon uncertainties and changing circumstances to warrant a judgment for their loss." We adhere to the principles therein announced, and this case does not come within any exception to that rule. In this case loss of profits, even if susceptible of proof, is not the proper measure of damages. If the plaintiff could be charged with loss of defendant's profits during the few weeks the machine was operated, it could with equal reason and justice be required to account for the loss experienced during the lifetime of the defendant and this machine. The rule announced must be followed and in so doing mere guess work, conjecture, and anticipation can never take the place of tangible facts upon which the jury may determine the actual damages sustained.

The defendant does testify that he paid $21 freight on the machine and paid $191 purchase price: but these expenditures in no manner indicate the value of the machine as delivered or the value as represented. Under the general rule, to entitle him to damages for fraud in the inducement of the contract, defendant must prove a difference between the actual value of the property received and the value which it would have had if the facts had been as represented.

No matter how fraudulent the conduct of the plaintiff may have been, if it occasioned no loss or damage to the defendant, he can recover nothing as damages. Since the defendant produced no facts upon which the damages could be measured by any proper rule in an action to recover for fraud in the inducement of the contract, he has wholly failed to establish either a defense or a cause of action on the theory of affirmance and claim for damages for fraud.

Both plaintiff and defendant in their briefs have argued the question of waiver of defendant's right to recover damages, although no such issue is presented by the pleadings.

The facts in the case are not disputed. It appears from the evidence of the defendant himself that the contract was signed on April 5, 1917; at the same time defendant paid $150 in cash. The machine was shipped by plaintiff to Hominy, and there remained in the freight house until July 6, 1917, when defendant signed the note upon which plaintiff based this action, took the bill of lading, and moved the machine to his place of business. Thereafter he made payments on the note. On April 23, 1917, three months before he executed the note which he now desires to avoid, he wrote a letter to the plaintiff asking that the order be canceled because of the sale by plaintiff of another machine in the town of Hominy. Therefore, when the defendant signed the note and accepted the machine in July, 1917, he was fully cognizant of plaintiff's alleged fraud. After having signed the note and accepted the machine, he wrote another letter, admitting the execution of the note, but suggested that he could not use the machine on account of the required electric current, thereby ignoring the defense he now offers concerning the sale of the second machine in Hominy. A year later he wrote plaintiff advising he had quit business and would like to return the machine and permit plaintiff to retain the $191 already paid.

Any act of a defrauded party which recognizes the binding force of a contract constitutes an affirmance of the contract. He thereby waives the right of rescission, but does not necessarily waive the right to recover damages for fraud, for the very good reason that before he can recover damages occasioned by the fraud, he must affirm the contract.

We cannot grant the purchaser an election of two remedies and then deny him the benefit of one solely because he elects to adopt it. The following cases recognize this rule: Matlock v. Repper, 47 Ark. 148; Wilson v. Nichols (Conn.) 43 Atl. 1052; Dillinback v. Davis (Iowa) 172 N. W. 184; Morman v. Harrington (Mich.) 77 N. W. 242; Gilcrist v. Manning (Wis.) 19 N. W. 959.

In examining the decisions of this court we find some rather careless language in the case of Hooker v Wilson, 69 Okla. 43, 169 Pac. 1097, which apparently fails to distinguish between waiver of right to rescind and waiver of right upon affirmance to recover damages for fraud. In so far as that case conflicts with the principles announced in this case, it is hereby overruled.

After executing the note pursuant to the contract and making payments thereon, with knowledge of fraud, defendant is precluded from thereafter rescinding the contract for fraud. There can be no doubt that defendant has effectually waived his right to rescind on account of fraud and is now relegated to an action for damages after affirmance, if he is entitled to any redress whatever.

If this contract were executory on the part of the defendant, then under the established rule the court would have the right to determine, as a matter of law, that the defendant had not only waived his right to

rescind the contract for fraud, but had likewise waived his right to recover damages for fraud in the inducement of the contract. The cases are thoroughly discussed in Kingman & Co. v. Stoddard, 29 C. C. A. 413, 84 Fed. 740, which lays down the following rule:

"With respect to an executory contract one may not after knowledge of fraud continue to carry it out exacting performance from the other party and receive its benefits and still pursue an action for deceit. This because continued performance with knowledge of fraud signifies a ratification of a contract voidable for fraud and condones the fraud."

In Thompson v. Libbey (Minn.) 31 N. W. 52, the court gives the reason for this rule as follows:

"The case then squarely raises this question: Can one who has been induced by fraud and deceit to make an executory contract for the purchase of personal property, to be delivered and paid for in the future, but who, having discovered the fraud while the contract is yet wholly executory, nevertheless thereafter accepts and uses the property, still maintain an action for damages for the fraud, or, which is the same thing, set them up by way of recoupment in an action against him for the purchase money? If the contract be executed in whole or in part, before the fraud is discovered, it is well settled that the purchaser need not rescind, but may retain the property and also bring his action for damages on account of the deceit. But to allow a person who has discovered the fraud while the contract is still wholly executory to go on and execute it, and then sue for the fraud, looks very much like permitting him to speculate upon the fraud of the other party. It is virtually to allow a man to recover for self-inflicted injuries. The fraud is really consummated, and the damages incurred, by the acceptance of the property and paying for it. And if this is done after the fraud is discovered, the purchaser cannot say that he sustained this damage by reason of the fraud. It seems to us that if a party discovers the fraud before he enters upon the performance of the contract, he must decide whether he will go on under it or rescind. He cannot say it is a good contract for the purpose of authorizing him to accept the property, but not binding on him as to the price to be paid for it."

But the defendant in the case under consideration was not confronted with a contract wholly executory on his part. He had paid $150 on the machine at the time the original contract was executed and before the discovery of the sale of the second machine. The damages sustained by the defendant in this case are not "self-inflicted injuries" within the rule. If he desired to affirm the contract and sue for damages, he was entitled to retain the machine and complete the execution of the contract and sue for damages occasioned by the fraud. It was necessary for him to execute the note in order to secure possession of the bill of lading and the machine for which he had already paid $150. Therefore, the defendant does not necessarily come within the reason of the rule announced in the first foregoing case. He had the right to complete the performance thereof and thereby affirm the contract and sue for damages; but the right to recover for fraud in the inducement of the contract may likewise be waived by the defendant, even though the contract had been partly executed before he discovered the fraud. The rule applicable to him is expressed in 14 Am. & Eng. Cyc. of Law (2nd Ed.) page 171, as follows:

"The rule that affirmance of a contract with knowledge of fraud does not bar an action for damages is subject to the limitation that the party defrauded must stand toward the other at arm's length; must comply with the terms of the contract on his part; must not ask favors of the other party or offer to perform the contract on conditions which he has no right to exact, and must not make any new agreement or engagement respecting it. If he does so, he waives the fraud."

The Supreme Court of California applied this principle in the case of Schmidt et al. v. Mesler, 48 Pac. 54, and the Missouri Supreme Court approved the rule in Brown v. South Joplin Lead & Zinc Mining Co., 132 S. W. 693.

Our own court, in Reger v. Henry, 48 Okla. 759, 150 Pac. 722, held that ordinarily a jury, under proper instructions, must determine whether a defrauded party, in completing the performance of a partly executed contract, intended to waive his action for damages.

The fact that the defendant executed the note sued on herein and made payments thereon, and wrote various letters to the plaintiff ignoring the claim for fraud, all with knowledge on the part of the defendant of the sale of the second machine and the fact that he made no claim for such damages for so long a time thereafter and until sued in this action, go far toward showing an intention on the part of the defendant to waive his right of action to recover damages for fraud in the inducement of the contract even though he elected to affirm the contract. This is a question of fact for a jury to determine if properly pleaded and submitted to a jury under prop-

er instructions. We do not here decide whether the evidence in this record shows that the defendant did waive his right to claim damages. Other evidence may be offered at another trial which would render our conclusion as to the sufficiency of this evidence of no value there.

For the reasons set out above, we are unable to sustain this judgment either upon the theory that the defense was rescission for fraud or was a counterclaim to recover damages for fraud in the inducement of the contract.

We find a number of cases suggesting that in addition to the damages sustained on account of fraud, a defrauded party may also recover such damage as results from breach of a warranty contained in the contract itself. Wesley v. Diamond, 26 Okla. 170, 109 Pac. 524. Judge Sanborn gives an able discussion thereof in the case of Wilson v. New United Cattle Ranch Co., 20 C. C. A. 441, 73 Fed. 994. Such action is based on a breach of an express warranty contained in the contract, and is not an action in tort for damages on account of fraud, but necessarily is an affirmance of the contract because it seeks to recover rights under the provision of the contract. The action for damages for fraud is entirely distinct from any rights connected with a provision of the contract. 1 Page on Contracts, sec. 340.

"An action for a breach of the warranty is an action on the contract, whereas the gist of an action for fraud and deceit is not any breach of the contract, but that the party has been led to his damage by fraud into making it." Thompson v. Libbey (Minn.) 31 N. W. 52.

The contract of purchase was signed by the defendant in writing. Defendant alleges that he signed the contract in blank with the understanding that plaintiff would insert therein the representation that it would sell no other machine in the town of Hominy, and argues that such representation is, therefore, a warranty which should be a part of the contract. A defrauded party cannot treat an alleged fraudulent representation as terms of a contract. Such representation constitutes merely grounds for avoiding liability under the contract and cannot be a covenant of the instrument itself. See Norris v. Colorado Turkey Honestone Co. (Colo.) 43 Pac. 1024. Neither the pleadings nor evidence is sufficient to show mutual mistake or to otherwise justify a reformation of the contract by the insertion of this representation, and no such reformation was prayed for in the defendant's cross-petition.

We can hardly see how the amount of damages in this case can be lawfully measured under the recognized rule. No speculative or "guess work" evidence is competent, and a witness must prove his competency to declare the valuations to be proven. In fact, under the defendant's story, to which we here stand committed, it seems unlikely that the acts of the selling agent can be made to constitute a legal fraud. For these reasons, we are much constrained to render judgment here for the plaintiff. but upon full consideration of the case have deemed it advisable to merely grant a new trial.

The judgment of the lower court is reversed and the case remanded for further proceedings in accordance with the rules of law as announced in the opinion.

JOHNSON, C. J., and BRANSON,. HARRISON, and WARREN, JJ.. concur.